AMY E. JACKS (#155681)
LAW OFFICE OF AMY E. JACKS
315 E. 8th St. #801
Los Angeles, CA 90014
Telephone: (213) 489-9025
Facsimile: (213) 489-9027
Email: amyejacks@sbcglobal.net

SHAUN KHOJAYAN (#197690)
LAW OFFICES OF SHAUN KHOJAYAN
 & ASSOCIATES, P.L.C.
515 S. Flower Street, 19th Floor
Los Angeles, CA 90071
Telephone: (310) 274-6111
Facsimile: (310) 274-6211
Email: shaun@khojayan.com

Attorneys for Defendant
PAUL GARY WALLACE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL GARY WALLACE,<br><br>Defendant. | Case No.: 20-CR-00293-AB-1<br><br>REPLY IN SUPPORT OF DEFENDANT WALLACE's MOTION TO MODIFY PROTECTIVE ORDER (Doc. 22)<br><br>Date: March 17, 2021<br>Time: 10:00 am |

Defendant Paul Gary Wallace submits the following Reply in Support of his previously filed Motion to Modify Protective Order.

Dated: March 2, 2021                    Respectfully submitted,

1

/s/*Shaun Khojayan*
Shaun Khojayan

/s/ *Amy E. Jacks*
Amy E. Jacks

Attorneys for Defendant
PAUL GARY WALLACE

2.

In its Opposition to Mr. Wallace's Motion to Modify the Protective Order ("Govt Opp"), the government admits that it has designated wide swaths of the discovery disclosed to date as "Protective Order Discovery" even though these materials have absolutely nothing to do with witness statements or identifying information about a witness. Govt Opp at p. 2 lines 5-21. And the government offers to "de-designate" these materials, removing them from the "Protective Order Discovery" category subject to the terms of the Protective Order. Govt Opp at p. 2 lines 9-15 and p. 13 lines 1-18. Mr. Wallace welcomes this concession. The government should be given a short time period to "de-designate" these materials, and re-disclose them in such a way that they are not marked as "Protective Order Discovery," so that defense counsel can provide them to Mr. Wallace on a hard drive consistent with MDC policies and procedures.

Prior to filing its Opposition to Mr. Wallace's motion, the government had not communicated any offer to "de-designate" previously disclosed discovery materials. In fact, the government rejected Mr. Wallace's January 6, 2021 request to permit Mr. Wallace to possess the vast majority of investigative documents related to the 2003 Pickett homicide and the 2014 Brown homicide and suggested that defense counsel engage in an untenable and time consuming document by document negotiation over what could and could not be possessed by Mr. Wallace. *See* Exhibit 1, 1/6/2021 email from Jacks to government counsel with government response and Exhibit 2 email attachment listing discovery materials defense team wanted to provide to Mr. Wallace.

De-designating discovery materials will solve some, but not all, of the issues with the Protective Order raised by Mr. Wallace. When it comes to designating discovery materials as "Protective Order Discovery" the government's default position has been to include almost every page and recording in the "Protective Order Discovery" category, regardless of whether it contains a witness statement or identifying information about a witness. In fact, at the time of Mr. Wallace's

1

motion, 4571 out of 5700 pages (or 80%) of discovery materials were marked as protected. This protected category also included statements made not by a witness but by Mr. Wallace, himself! Thus, the government needs clear and firm guidance from the Court as to what materials are legitimately designated "Protective Order Discovery" and what materials should be disclosed without any such protection.

The government has not made any showing as to what good cause exists to withhold from Mr. Wallace witness statements (whether written or recorded) where the witness' name and personal identifying information have been redacted. In fact, the government seems to argue that these redacted witness statements should be withheld from Mr. Wallace because he will be able to figure out who the witnesses are and what they have said: "Thus, providing defendant access to protective order discovery, even though redacted, will still provide him access to documentation of witnesses' statements and/or witnesses' identities." Govt Opp at p. 3 line 13-16.

Mr. Wallace is a defendant in a federal capital case. He is constitutionally entitled to know who the potential witnesses are, what they have said to law enforcement, and to review and discuss that information with his defense team. The protective order was not made to hide the government's case from Mr. Wallace, rather, the court agreed to enter the Stipulated Protective Order to keep Mr. Wallace or others from disseminating the "paperwork" (i.e. official law enforcement reports of their statements) into the community where they could possibly be used to fuel retaliation for cooperation with law enforcement. If these redacted witness statements are provided to Mr. Wallace in electronic format, then they cannot be mailed or otherwise smuggled out of the detention facility and the "paperwork" issue is eliminated.

The government suggests that if Mr. Wallace were provided these materials in electronic format then he could somehow create his own "paperwork" by copying, transmitting, or displaying those statements. Govt Opp at p. 3 line 17-20. Is the government really suggesting that if Mr. Wallace copied the redacted witness

statements in pencil onto paper and then somehow managed to circulate those handwritten notes in the community, that would be "paperwork," the equivalent of official law enforcement reports, which could pose a danger to witnesses? This is ridiculous. The government's arguments about "paperwork" related to official documents that some community members could possibly view as corroboration that an individual is cooperating with law enforcement. A defendant's handwritten notes do not carry the imprimatur of official law enforcement documents. And government cannot present one example of a situation where handwritten notes have been used as "paperwork" to validate a potential witness's cooperation with law enforcement.

Equally unsupported by "good cause" is the government's assertion that a danger could be posed to a witness if Mr. Wallace permitted another inmate to read the electronic copy of the redacted witness statement off a computer screen. Reading a statement of an unidentified individual off a computer screen and then telling someone else about it is not the equivalent of circulating "paperwork" corroborating a specific individual's cooperation with law enforcement. This is mere gossip or uncorroborated verbal assertion, which in gang culture is insufficient to prove an individual's cooperation with law enforcement. The government has not produced any evidence that if information were communicated in this matter it would present a danger to any witness.

Coincidently, one opinion the government relies on for its "paperwork" concerns was issued by United States District Court Judge James Browning in *United States v. DeLeon, et. al.,* CR 15-4268 JB (D.N.M. October 28, 2016). Govt Opp at p. 14 line 17-20. That case alleged a VICAR prison murder at the Southern New Mexico Correctional Facility by members of a prison gang, the Sindicato de Nuevo Mexico ("SNM"). Ms. Jacks was learned counsel for defendant Daniel Sanchez in that litigation and, what the government omits, is that while Judge Browning recognized the witness safety issue potentially posed by official law

enforcement reports (i.e. "paperwork) circulating in public, he permitted the defendants to possess computer tablets loaded with electronic copies of the redacted discovery materials, including recorded witness interviews.  Judge Browning's balanced solution, similar to that proposed by Mr. Wallace here, protected witness safety to the extent possible, and honored the defendants' constitutional rights to due process, to participate in their defense, and to receive meaningful and effective assistance of counsel.

The government urges the Court to dismiss Mr. Wallace's concerns about the protective order by categorizing Mr. Wallace's motion as a motion to reconsider. The current order was entered into after a stipulation at the very beginning of the case and before any government discovery, protected or unprotected, was disclosed. The order was authored by the government and adopted without modification by the Court.  The order, by its very terms, improperly included defense work product in the definition of "Protective Order Discovery" and put substantial restraints on Mr. Wallace's ability to communicate with and assist defense counsel inconsistent with this Fifth and Sixth amendment rights.

At the time defense counsel agreed to the stipulated order, he had no idea that the government would designate items such as photographs, crime scene diagrams, property reports, and even Mr. Wallace's own statements as "Protective Order Discovery." Defense counsel did not know the government would use the protective order to prohibit Mr. Wallace from reviewing over 80% of the discovery on his own.  Defense counsel did not discern that the proposed order overstepped the government's authority by purporting to protect materials beyond those produced in discovery and did not appreciate the substantial interference the order placed on Mr. Wallace's ability to assist in his defense and communicate with his counsel. Nor did defense counsel contemplate a complete shutdown of the MDC to attorney visiting for a period of three months due to the rampant spread of coronavirus.  Any one of these facts would be sufficient for the Court to justifiably

reconsider its prior ruling and modify the terms of the protective order so as not to continue to place an unfair burden on Mr. Wallace's constitutional rights. All the circumstances, together, present a compelling case for the Court to carefully consider the parties arguments and make appropriate modifications to the order.

Dated: March 2, 2021					Respectfully submitted,

					/s/*Shaun Khojayan*
					Shaun Khojayan

					/s/ *Amy E. Jacks*
					Amy E. Jacks

					Attorneys for Defendant
					PAUL GARY WALLACE