# EXHIBIT A

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3    HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5    UNITED STATES OF AMERICA,        )
                                      )
6                   PLAINTIFF,        )
                                      )
7              vs.                    ) No. CR 20-0293-AB
                                      )
8    PAUL GARY WALLACE,               )
                                      )
9                   DEFENDANT.        )
     _____)

10

11

12

13    REPORTER'S TRANSCRIPT OF PROCEEDINGS

14    WEDNESDAY, JANUARY 13, 2021

15    1:17 P.M.

16    LOS ANGELES, CALIFORNIA

17

18

19

20

21

22    _____

23    **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
      FEDERAL OFFICIAL COURT REPORTER
24    350 WEST FIRST STREET, ROOM 4311
      LOS ANGELES, CALIFORNIA 90012
25    cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:  (VIA TELEPHONE)

 2   FOR THE PLAINTIFF:

 3           OFFICE OF THE UNITED STATES ATTORNEY
             BY: JOSEPH D. AXELRAD
 4           AND JEFFREY M. CHEMERINSKY
             ASSISTANT U.S. ATTORNEYS
 5           312 NORTH SPRING STREET
             13TH FLOOR
 6           LOS ANGELES, CALIFORNIA 90012
             (213) 894-2434

 7

 8   FOR THE DEFENDANT:

 9           LAW OFFICE SHAUN KHOJAYAN & ASSOCIATES PLC
             BY:  SHAUN KHOJAYAN, ATTORNEY AT LAW
10           515 SOUTH FLOWER STREET
             FLOOR 19
11           LOS ANGELES, CALIFORNIA 90071
             (310) 274-6111

12
                     - AND -
13
             LAW OFFICE AMY E. JACKS
14           BY:  AMY E. JACKS, ATTORNEY AT LAW
             315 EAST 8TH STREET
15           SUITE 801
             LOS ANGELES, CALIFORNIA 90014
16           (213) 489-9025

17

18

19

20

21

22

23

24

25
```

```
 1          LOS ANGELES, CALIFORNIA; WEDNESDAY, JANUARY 13, 2021

 2                            1:17 P.M.

 3                             - - -

 4          THE CLERK:  Calling CR 20-0293, United States of

 5   America versus Paul Gary Wallace.

 6          Counsel, please state your appearances.

 7          MR. AXELRAD:  Good afternoon, Your Honor.

 8          Joseph Axelrad and Jeffrey Chemerinsky on behalf

 9   of the United States.

10          THE COURT:  Good afternoon.

11          MR. KHOJAYAN:  Good afternoon.  Shaun Khojayan and

12   Amy Jacks.  We represent Paul Wallace.  He is present by

13   telephone, and so am I and Ms. Jacks.

14          THE COURT:  Good afternoon to all three of you.

15   We are proceeding using alternative technology as opposed to

16   being in person because of the COVID-19 pandemic.  There

17   have been various orders issued over the last nine months or

18   so nationwide at the state level, local level, and more

19   specifically our Chief Judge has issued or activated the

20   Continuity of Operations plan for the Central District of

21   California which closed the courthouse to the public except

22   for -- but allows for hearings such as these to occur

23   utilizing alternative technology such as Zoom and/or

24   telephonic conferencing.

25          In light of the foregoing, I do find good cause to
```

```
 1    proceed via video and telephonic conferencing for the

 2    hearing scheduled in this case, and I find that this hearing

 3    should not be further delayed without a serious harm to the

 4    interests of justice.

 5              Mr. Wallace, I just want to confirm with you that

 6    you are okay proceeding via video and telephone for this

 7    hearing this afternoon.  Are you okay with that, sir?

 8              THE DEFENDANT:  Yes, Your Honor.

 9              THE COURT:  We are here on defendant's motion to

10    access grand jury materials.  I have had a chance to review

11    the papers.  I have a couple questions, and obviously I want

12    to give the parties time to make any argument they deem

13    necessary.

14              I guess the issues that I see in looking at the

15    papers are a few.  Query whether this motion is speculative,

16    and I say "speculative" only because it appears -- and maybe

17    I am wrong -- that the grand jury was convened before the

18    COVID-19 pandemic; so a lot of the issues that the defense

19    raised as to the impact of COVID-19 on the grand jury panel

20    overall, I think, are not well taken because this grand jury

21    was convened before the pandemic.

22              And so that's what I am struggling with here.  So

23    let me just ask.  I will start off with asking the

24    government a couple of questions.

25              Am I missing something here?  Wasn't the grand
```

1   jury convened in this case, initially convened, before the

2   pandemic?

3           MR. AXELRAD:  Yes, Your Honor.  This was a January

4   grand jury which I believe was convened in the first two

5   weeks or so of January.

6           THE COURT:  Look, you, obviously, read the papers.

7   I mean, you, sort of, alluded or danced around the issue of,

8   like, to the extent there was alternative technology.

9           Is there a concern sharing in public court as to

10  what forms of technology were utilized to handle this

11  matter?

12          MR. AXELRAD:  Your Honor, I don't have a

13  concern -- government doesn't have a concern beyond our

14  obligation to Rule 6.

15          So to the extent that the Court is asking the

16  government or ordering the government to talk about it or

17  disclose it, I don't think there is any problem talking

18  about it.  I don't know that that is something that we can

19  offer up without some sort of protection as it relates to

20  Rule 6.

21          THE COURT:  Let me ask maybe a general question.

22          Let's say for the purposes of this question, not

23  related to this case.  Since the pandemic, has the

24  government had to use alternative technology to convene

25  grand juries?

```
 1              MR. AXELRAD:  Yes, Your Honor.  The
 2   government -- I mean, I can elaborate, Your Honor, but yes.
 3              THE COURT:  Please.  Go ahead.
 4              MR. AXELRAD:  Your Honor, much in the way that we
 5   are, sort of, speaking today, at the time that this
 6   particular presentation was made, the grand jury was meeting
 7   together, and the government was presenting via video
 8   conference from a separate room, a separate location, in
 9   order to maintain COVID protocols and the safety of grand
10   jurors.
11              The grand jurors were spaced out, large room
12   themselves, and our presentation was presented to them via
13   video.
14              THE COURT:  Okay.  Got it.
15              Okay.  Let me ask -- continue with some follow-up
16   questions to the government.  Refresh my memory or tell me
17   when did this grand jury end?
18              MR. AXELRAD:  This grand jury, Your Honor -- I am
19   speaking from memory here.  So forgive me if I am not
20   precise -- but I believe this grand jury was impaneled for
21   six months, and I don't want to be quoted on this, but I
22   think they may have been extended, but I don't believe that
23   that grand jury is currently impaneled.
24              THE COURT:  Summer to fall of 2020?
25              MR. AXELRAD:  I think earlier.  So it would have
```

1    been winter of -- winter of 2020 through summer 2020.  So

2    January through summer is my understanding, Your Honor, but

3    I can certainly confirm that.

4              THE COURT:  No worries.  Let me just jot some

5    notes here.

6              Let me shift.  Who has drawn the short straw on

7    behalf of Mr. Wallace?  Is it Ms. Jacks or Mr. Khojayan?

8              MR. KHOJAYAN:  It's Mr. Khojayan, Your Honor.

9              THE COURT:  Help me.  I am just trying to

10   understand your main points here.

11             If in fact the grand jury was convened before the

12   pandemic, which the government represents, then your

13   concerns about impact of COVID-19 as it relates to the

14   representation of the grand jury panel, wouldn't that be

15   somewhat mooted if in fact the panel was convened

16   beforehand?

17             MR. KHOJAYAN:  Your Honor, that's not the argument

18   we made.  That's the argument that the government chose to

19   argue against, but that's not the argument that we made.

20             That's not what the motion is.  The motion is,

21   although the grand jury may have been impaneled before the

22   pandemic in January 2020, since the pandemic there --

23   because the pandemic has a disproportionate impact on

24   blacks, Latinos, those of lower economic status who are --

25   all three of those categories, those are all protected class

```
 1  people, then the grand jurors who may have been selected on

 2  this grand jury could have been affected and excused from

 3  grand jury service and so the grand jury --

 4          THE COURT:  Hold on, Mr. Khojayan.  I want to make

 5  sure I understand.

 6          You are saying that, because COVID may have a

 7  disproportionate impact on communities of color, it could

 8  have impacted the grand jury -- impacted what?  It would

 9  have impacted what?  That's what I'm just trying to

10  understand.

11          MR. KHOJAYAN:  Impacted those members of the grand

12  jury that fall within that protected class, impacted their

13  grand jury service because they would either have --

14          THE COURT:  You mean, like, during the course of

15  their grand jury service they would have left or gotten

16  sick --

17          MR. KHOJAYAN:  Yes.

18          THE COURT:  -- or something like that?

19          MR. KHOJAYAN:  Exactly.

20          THE COURT:  Okay.  And do we have any indication

21  that any of that occurred, though?

22          MR. KHOJAYAN:  Well, we have an indication --

23  one -- here, my response is this:  The prosecution's

24  opposition does not say that that did not occur.  That's

25  number one.
```

1          Number two, we do know that these communities and

2     these class of people were and are negatively impacted in

3     this district by COVID-19.  And so we have reason to be

4     concerned and reason to believe that, if those class of

5     people were to have -- were part of this grand jury that

6     could have been affected -- and so that is one reason why

7     the grand jury materials should be -- the ones that we've

8     sought should be disclosed so that those answers -- those

9     questions could be answered.

10          This is simply a motion for access to information,

11     to access materials.  This is not the motion to dismiss the

12     Indictment because --

13          THE COURT:  Okay.

14          MR. KHOJAYAN:  -- because the statute and the case

15     law allows for access to this information, to otherwise

16     nonpublic information, based on the effect of the

17     disproportionate known negative effect that this pandemic

18     has on these protected classes -- and that is reason to

19     believe that -- if they were serving on the grand jury, that

20     we should be given access to this information, which we

21     agree can be provided to us under protective order.  That's

22     one.

23          THE COURT:  Let me stop you there, if I could.

24          MR. KHOJAYAN:  Yes.

25          THE COURT:  So what you are asking for assumes

1     that the grand jury comprises of a significant or at least

2     an amount of individuals that would be -- that could be

3     impacted by COVID-19; right?  I mean, of which --

4              MR. KHOJAYAN:  Yes, it --

5              THE COURT:  -- you have no idea currently;

6     correct?

7              MR. KHOJAYAN:  I apologize, Your Honor.  Go ahead,

8     I didn't mean to cut you off.  Go ahead, please.

9              THE COURT:  Your premise assumes that there was

10    representation of these groups in the grand jury panel that

11    were adversely affected.  Correct?

12             MR. KHOJAYAN:  Yes, except it does not have to be

13    a majority or a certain percentage of grand jurors for this

14    to have any -- for this to have legs.

15             Even if one grand juror that falls within this

16    protective class was negatively affected and excused from

17    service because of COVID-19, then that affected their grand

18    jury service.

19             And no citizen should be excluded from service on

20    either the grand jury or the petit jury on account of race,

21    color, religion, sex, national origin, or economic status.

22             Even if this affects only one juror, one grand

23    juror, that's reason enough to allow for access to these

24    materials to find out if in fact they were excused.

25             The grand jury should not continue to -- the grand

1    jury should not have continued to go forward if it was -- if

2    as we know these people of this protected classes were being

3    negatively affected because to go forward knowing that they

4    were negatively affected, knowing that they would be excused

5    or need to be excused because of their either being sick or

6    fear of being sick or fear of being contract -- of

7    contracting COVID-19, well, that's excluding them for

8    service.  So --

9         THE COURT:  But it's not excluding them because of

10   race, is it?

11        MR. KHOJAYAN:  Well, in some ways it is because we

12   know that their race is affecting their -- whether it's

13   scientific or medical reason.  We know that the data that

14   we've provided shows that these people -- Latinos, blacks,

15   are -- have a higher risk of contracting COVID-19, of being

16   sick from COVID-19, and so, I mean, the way I read that, it

17   is partially based on their race.

18        THE COURT:  Is it your view, then -- I believe a

19   grand jury can consist of as many as 23, but I think you

20   need 16 to indict.  I may be wrong on those numbers.

21        But is it your view that -- I am just saying

22   hypothetically speaking -- if there were out of the 23 there

23   are -- there happen to be one person of color of that 23,

24   and that that one person of color, let's assume for the sake

25   of this discussion, unfortunately, contracted the virus and

1    they said, "I can't serve, I'm sick," you are saying that

2    that would have negatively impacted the decision making of

3    the jurors?

4         Let me restate that.  That would have been

5    tantamount to an exclusion of that person of color because

6    of his or her race?

7         MR. KHOJAYAN:  Yes, with the understanding that

8    the grand jury should not have -- when the -- are in --

9         THE COURT:  If I could interrupt again.

10        Are you saying that, once that grand juror was

11   excused because of illness, then the proceedings should have

12   stopped and waited for that grand juror to get well before

13   they could resume?

14        MR. KHOJAYAN:  That would be what I would suggest

15   should have happened.

16        But what I want to say is, on March 31st, 2020,

17   the Chief Judge suspended all grand jury proceedings, which

18   is fine and makes sense because of the impact of COVID-19.

19        But what didn't make sense and which is improper

20   is that it was allowed to continue and allowed to have

21   these -- they should not have been allowed to continue.  The

22   grand jury should not have been allowed to continue to

23   convene because of the impact of COVID-19 and because of the

24   disproportionate impact of COVID-19 on these protected class

25   of people.

```
1          THE COURT:  You are saying the grand jury should
2    not have been allowed to convene at all.
3          MR. KHOJAYAN:  Well --
4          THE COURT:  In any case?
5          MR. KHOJAYAN:  Well, to avoid having this
6    disproportionate impact on a protected class of people.
7          Now, if a protected class of people were not
8    excused, then that portion of this motion -- that portion of
9    a prospective motion to dismiss would not make sense because
10   they were not excused.  But that's the purpose of this
11   motion.
12         We want to find out were people excused after the
13   grand jury was allowed to reconvene despite -- well, allowed
14   to reconvene while this pandemic was still going on?  And it
15   is, of course, still going on.
16         THE COURT:  Okay.  Thank you.
17         Mr. Axelrad or Mr. Chemerinsky, any response to
18   that?
19         MR. AXELRAD:  I think Your Honor's questions are
20   going to the heart of the issue.  I think the argument as
21   the government understands defendant is making now seems to
22   be premised on speculation on speculation on speculation.
23         As Your Honor noted in the Court's questions, the
24   defendant's arguments seem to presume that the grand jury
25   contained members of a protected class, that those members
```

1   of the protected class that might have been in the venire or

2   on the petite grand jury were affected in some way, that

3   their effect presumably by suffering from COVID-19 or having

4   a family member suffering from COVID was negative to the

5   point where they would otherwise have sought some sort of

6   hardship exclusion and that they -- the hardship exclusion

7   either was or was not denied based on COVID.

8          It seems like this sort of argument that the

9   defendant is making here could be extrapolated and applied

10  in every case that the Court has before it.  It just seems

11  like, frankly, the defendant is looking to inject race here

12  where I don't know that that is apparently an issue.  It

13  doesn't seem that any of the defendant's arguments here are

14  grounded in any sort of fact or anything less than

15  speculation.

16         The number of inferences that are necessary in

17  order to meet defendant's speculative argument are pretty

18  significant, and I think for that reason the Court can deny

19  the request based on that.

20         THE COURT:  Okay.

21         Mr. Khojayan, anything you want to say in

22  response?

23         MR. KHOJAYAN:  Well, yes.

24         This is not applicable in every case.  This is

25  applicable certainly in this case because it was indicted

```
 1   during the pandemic, and so that's why we raise it.
 2            If other cases want to raise the same thing
 3   because they were indicted during the pandemic, then that's
 4   up to them.
 5            But important to note before we -- for Your Honor
 6   to consider -- so there are two parts to this motion.  One
 7   is the discussion we've had about the impact of COVID-19 and
 8   grand jurors being excluded improperly or properly.
 9            The second part, which is very important is that
10   the grand jury -- and the government admitted that the grand
11   jury -- that the government presented, it seemed from what I
12   understood the government to say, that they had one meeting
13   where the grand jurors were spread out and the government
14   presented evidence by video conference it seems.  That
15   raises several --
16            THE COURT:  But to be fair, I'm not -- and maybe I
17   misheard this, but I was posing it as a hypothetical.  I
18   don't know if the government said in this case -- and,
19   Mr. Axelrad, please correct me if I am wrong -- in this case
20   there was video presentations to the grand jury.  I thought
21   my question was framed to find out, since the pandemic, what
22   modes or what technology has been utilized to present
23   information to the grand jury without asking specifically in
24   this case.
25            Now, Mr. Axelrad, if I am wrong, please correct
```

```
 1    me.

 2            MR. AXELRAD:  No, Your Honor.  The government was

 3    responding to the Court's hypothetical based on the concerns

 4    that the government raised related to Rule 6.

 5            Of course, if Your Honor has specific questions,

 6    we can address those.  But the government at this point is

 7    only responding to the hypothetical.

 8            THE COURT:  Mr. Khojayan, I am going to come back

 9    to you in a moment.

10            But, Mr. Axelrad, let me ask you this:  Let's

11    assume for the sake of this discussion that in fact, in

12    Mr. Wallace's case, portions of the grand jury presentation

13    were done with grand jurors in a room and the presentation

14    was done by a prosecutor like yourself, utilizing Zoom

15    technology.  Are you aware of any authority that precludes

16    that from occurring?

17            MR. AXELRAD:  I am not, Your Honor.  And the

18    government's opposition discusses the various ways in which

19    Rule 6 does not prohibit this, that the case law and

20    long-standing precedent allows for the grand jury to

21    exercise a significant degree of latitude in how it conducts

22    it's own proceedings and, lastly, Your Honor, how Rule 6

23    itself specifically contemplates the use of video technology

24    for -- this is the example used in Rule 6 for, as Your Honor

25    knows, magistrate judges to utilize video conferencing or
```

1  video for swearing out process.

2      So Rule 6 does address itself the idea of video

3  conferencing, and it doesn't prohibit that in the grand

4  jury's deliberations.  And that taken together with the very

5  significant precedent that allows the grand jury to conduct

6  its own proceedings in the manner it best sees fit,

7  obviously within the parameters of Rule 6, I think make this

8  sort of hypothetical that we're talking about entirely

9  permissible vis-à-vis Rule 6.

10     THE COURT:  Mr. Khojayan, I will pose the same

11 question to you.  Assuming that in this case portions of

12 Mr. Wallace's case was presented with grand jurors in a room

13 and utilizing Zoom technology, are you aware of any

14 authority that precludes that from occurring?

15     MR. KHOJAYAN:  Yes, I am.  Rule 6 does not state

16 that evidence can be presented by video conference.

17     THE COURT:  Right.  And I think Mr. Axelrad

18 indicated that.  But Mr. Axelrad also pointed out that, at

19 least, Rule 6 allows some latitude -- or the case law allows

20 latitude in how evidence is presented to a grand jury, and

21 Rule 6 does at least contemplate the use of alternative

22 technology in the form of a magistrate judge swearing out a

23 grand jury via video.

24     MR. KHOJAYAN:  When Rule 6 mentions the magistrate

25 judge using video conferencing to swear the -- to take the

1  return of the grand jury Indictment, that is not

2  presented -- that's not written in Rule 6 as an example of

3  how video conferencing is allowed to be used in grand jury

4  proceedings.

5         The way I read Rule 6 is that it simply is

6  allowing that exception to the magistrate.

7         Further, Your Honor asked for authority.  There

8  was a case that I cited in my reply, United States versus

9  Kane from the Western District of Washington earlier --

10         THE COURT:  Right.

11         MR. KHOJAYAN:  -- earlier last -- sorry, mid last

12  year, June 4, 2020, where the -- the opposite of what sort

13  of happening was argued.  The defendant argued that the

14  government should have indicted him earlier using video

15  conferencing and, because they didn't indict him earlier

16  using video conferencing as an example, that his speedy

17  trial rights were violated.

18         And unlike the government here, the government

19  there argued that video conferencing is not allowed for

20  grand jury proceedings for various reasons that I have

21  listed in the -- in my reply.  But also importantly the --

22         THE COURT:  Wait, Mr. Khojayan.  Let's be clear.

23  Did they say specifically that it was not allowed?  Or they

24  made the decision not to do so out of the abundance of

25  caution?

1          MR. KHOJAYAN:  It specifically said that there is

2     no legislation that permits grand jury proceedings to be

3     conducted remotely.

4          And so if there is no legislation that allows

5     grand jury proceedings to be conducted remotely, I read that

6     to say that there is no law that allows grand jury

7     proceedings to be conducted remotely.

8          And it lists -- the government in that case, which

9     I quoted for Your Honor, listed various problems with having

10    grand jurors participate by -- or having a video

11    conferencing as part of grand jury proceedings questions and

12    concerns about secrecy, who is present, are people actually

13    paying attention to the evidence being presented, et cetera.

14    Who else is present?

15         Importantly, Kane -- and we in this case -- I

16    point to the CARES Act, the CARES Act under which I think

17    Your Honor found that there was appropriate reason to have

18    this motion hearing by telephone, the CARES Act does not

19    list grand jury proceedings as one of the types of criminal

20    proceedings that are allowed to be done by video

21    conferencing.

22         It does not say that the government can present

23    evidence by video conferencing in order to combat COVID-19,

24    et cetera.

25         It lists exactly all the criminal proceedings that

```
1    are allowed to be potentially conducted with COVID -- sorry,

2    with video conferencing and grand jury proceedings are not

3    part of that list.

4          THE COURT:  Got it.  Now, Mr. Khojayan, can I

5    interrupt again -- and I am sorry because with the telephone

6    technology, it's tough, and I don't mean to cut you off.

7    It's just I want to make sure I understand all the

8    arguments.

9          And, again, I just remember when I was looking,

10   Kane, but in Kane wasn't the issue there having the grand

11   jurors appear via video conferencing, meaning the 12 or 23

12   each at different locations?

13         And I wonder if the analysis changes if in fact

14   the grand jurors were all in one place and they were being

15   presented information via video technology because I think

16   that those are -- again, we're treading in, I think,

17   unchartered waters.  I have not had the pleasure or

18   displeasure of litigating during a pandemic.

19         But at least as I read Kane, I thought the issue

20   was the grand jurors not all being in the same location and

21   they all being -- you know, at different locations which is

22   why there was a concern of who was in the room, what other

23   information.

24         But if in fact all of the grand jurors are in one

25   room, I think, A, you can, sort of, limit -- you can guard
```

CHIA MEI JUI, CSR 3287, CCRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    for secrecy, you can guard for who is paying attention

2    because everyone is in the room and presumably the

3    presenting lawyers are watching.  So it strikes me as

4    different.  But am I missing something there, Mr. Khojayan?

5         MR. KHOJAYAN:  You are right.  They are different.

6    But who is to say that that is what happened in this case?

7         The government did not tell us either in their

8    papers or here how this grand jury -- this grand jury that

9    indicted Mr. Wallace, how they met.  That is the problem.

10        THE COURT:  Well, let me --

11        MR. KHOJAYAN:  And further, the Chief -- sorry.

12   The Chief Judge, Your Honor, the Chief Judge in this

13   district said in-person meetings of the grand jury shall

14   remain suspended, and so the way I read that -- and then the

15   Chief Judge in May 2020 said in-person meetings of the grand

16   jury may resume at the discretion of the Chief Judge.

17        So the way I read that to mean and the way I read

18   the government's comment today to mean is that the grand

19   jurors may have met by video conferencing and other means

20   which, again, the government has not told us definitively

21   that the grand jury in this case did not meet by video

22   conferencing.

23        Instead, they told us some hypothetical about

24   prosecutors providing evidence possibly by video where grand

25   jurors possibly may have been spread out in the room and not

1    necessarily in this case.

2              So that is even more reason why -- to allow for

3    access to grand jury materials in this case under protective

4    order so we can have answers to these very important

5    questions rather than these hypothetical discussions about

6    what if it was done this way.

7              I mean, there is no harm in disclosing how it

8    actually occurred in this case and answering the questions

9    that we have requested, Your Honor.

10             THE COURT:  Okay.  Let me see if I can help you

11   out.

12             Mr. Axelrad, can you answer directly the question

13   as to how this grand jury in this case was convened and

14   presented information?

15             MR. AXELRAD:  I can, Your Honor.

16             I just -- again, with the caveat that are there

17   are some Rule 6 implications to us discussing the grand jury

18   procedures.

19             If Your Honor is asking us to go forward, I don't

20   think that I am -- I think that's fine.  I just need to make

21   sure that that is the record that we're laying without us,

22   sort of, sua sponte offering it.

23             THE COURT:  Yes, it is the record that we are

24   attempting to lay.  From the Court's perspective, I am not

25   going to ask you what was discussed or the contents.  I just

1    want to know the parameters by which information was

2    presented to the extent that you know.

3             MR. AXELRAD:  Certainly, Your Honor.

4             At the time this case was presented, the

5    government, in the same way consistent with the answer to

6    the government's hypothetical at the beginning of today's

7    hearing, the government and the government's witness were

8    located in a room and presented information to the members

9    of the grand jury who were located in another location.

10            The members of the grand jury had multiple video

11   screens around them, and the government's presentation was

12   beamed to them, for lack of a better term.

13            This was not the case as was in United States

14   versus Kane where, as I understand it, the members of the

15   grand jury were all appearing from their own respective

16   locations, I believe, at home or other locations personal to

17   them.

18            THE COURT:  So the grand jurors were all in one

19   location receiving the information remotely, if you will.

20            MR. AXELRAD:  That's correct, Your Honor.

21            THE COURT:  All right.  Thank you.

22            Okay.  Mr. Khojayan, anything further that you

23   wish to argue as it relates to that point or any other

24   points that we discussed this afternoon?

25            MR. KHOJAYAN:  I would say that I still don't

```
1   believe that even that procedure that's been described
2   comports with Rule 6 or the CARES Act.  And the rest of my
3   arguments I rest on my papers, Your Honor.
4            THE COURT:  All right.  Thank you, Mr. Khojayan.
5            I appreciate the argument on both sides in this
6   case.  Having read the papers and considered the advocacy
7   today, respectfully I am going to deny the motion for a
8   number of reasons.  I think primarily, one, as it relates to
9   the first point that we spent some time talking about, I do
10  think it's entirely too speculative at this point to justify
11  the production of any information that the defense is
12  seeking.
13           The premise presumes a number of hoops, if you
14  will, that -- or a number of things that we just don't know.
15           First off, that the grand jurors contained the
16  member of the protected class, that that member was affected
17  by COVID-19 and that that effect, because of COVID-19, they
18  were somehow excused.  We don't know any of that and no
19  reason to believe any of that occurred.
20           And then more specifically as to the last point
21  that we discussed -- and to Mr. Khojayan's credit he raised
22  a very interesting case that could present some issues in
23  the Kane case, but we don't have that scenario here.
24           The government's made a representation that the
25  grand jurors were all together, which is different than in
```

```
 1   U.S. versus Kane, and they all collectively received
 2   information as one group.
 3          I also find that, again, we are litigating during
 4   unprecedented times, during a pandemic.  The Ninth Circuit
 5   may say I am wrong on this, and I am willing to accept that.
 6          But given the pandemic and given the fact that I
 7   think Rule 6(e) does not -- or I should say there has not
 8   been any authority to suggest a procedure such as a
 9   magistrate judge swearing in a grand jury by video, that
10   conducting grand jury proceedings in the manner in the way
11   the government described I don't believe runs afoul of
12   Rule 6(e) because presumably those proceedings are excluded
13   to the public; so they are secret.
14          Presumably they're using the best available
15   technology to ensure that no one can hack into those
16   proceedings to guard against -- or guard for secrecy.
17          So I think, based on the current record, there is
18   no -- there is nothing to cause the Court to justify the
19   defense from getting the information it seeks in its papers;
20   so, accordingly, that motion is denied.
21          Thank you all, Counsel.
22          I don't know -- I don't have in front of me.  Do
23   we have a trial date set in this matter or -- I'm not sure.
24          MR. AXELRAD:  We do, Your Honor.  I believe the
25   trial date that we have set right now is in -- I want to say
```

1    April 23rd, but let me just check.

2         THE COURT:  I believe -- I checked with the boss,

3    the courtroom deputy.  I think it's May 18th.

4         MR. AXELRAD:  May 18th.  Thank you, Your Honor.

5         THE COURT:  Cautiously optimistic that

6    circumstances will be such that we will be able to have a

7    jury trial on that date.

8         I spoke with some colleagues in other parts of the

9    country.  They're endeavoring to figure out how to do these

10   things, but we'll have to see what the state of affairs is

11   in Los Angeles county and in our district specifically.

12        But until then, unless there is anything further,

13   we'll wrap up this hearing.

14        Anything further from the government?

15        MR. AXELRAD:  Nothing from the government,

16   Your Honor.  Thank you.

17        THE COURT:  Anything further from the defense?

18        MR. KHOJAYAN:  Your Honor, I -- not as to this,

19   but this pandemic is making our ability to have access to

20   Mr. Wallace and review evidence with Mr. Wallace and prepare

21   the defense with Mr. Wallace, making it very difficult.

22        I wanted to just note that for Your Honor, and so

23   we'll be conferring -- defense counsel conferring with each

24   other as well as the government to see how we can address

25   that issue.

```
 1              THE COURT:  I am certainly empathetic to that.
 2   And, unfortunately, you are not the first lawyer to raise
 3   that issue.
 4              The challenges -- again, we're in these
 5   unprecedented times.  Jails are trying to do what they can
 6   to reduce the possibility of any outbreaks in their
 7   respective facilities, and they're taking measures that they
 8   deem are appropriate.  Unfortunately, the unintended
 9   consequence of that is access to people like Mr. Wallace.
10              As you may know -- or to the extent that
11   Mr. Wallace doesn't know, we haven't had any criminal cases
12   of individuals in custody in Los Angeles at MDC in weeks
13   because of trying to contain a spread.
14              And I have colleagues throughout the country that
15   are going through similar challenges because of spreads of
16   this outbreak.
17              So I am empathetic.  I don't have any answers, but
18   I am cautiously optimistic that, as vaccines start getting
19   rolled out, those issues that you are concerned about will
20   be reduced somewhat.  But, obviously, meet and confer with
21   counsel, do what you can to keep the Court informed, and
22   we'll go from there.
23              MR. KHOJAYAN:  We'll do that, Your Honor.
24              THE COURT:  Thank you all.  Continue to stay safe,
25   and I will see you all at the next available opportunity.
```

```
1    Thank you.

2              MR. AXELRAD:  Thank you, Your Honor.

3              MS. JACKS:  Thank you, Your Honor.  Bye-bye.

4              THE COURT:  Bye-bye.

5         (Proceedings concluded at 1:56 p.m.)

6                         --oOo--

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          CERTIFICATE

 2

 3       I hereby certify that pursuant to Section 753,

 4  Title 28, United States Code, the foregoing is a true and

 5  correct transcript of the stenographically reported

 6  proceedings held in the above-entitled matter and that the

 7  transcript page format is in conformance with the

 8  regulations of the Judicial Conference of the United States.

 9

10  Date:  January 1, 2021.

11

12

13

14                  __/S/ CHIA MEI JUI _____

15                  Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```

CHIA MEI JUI, CSR 3287, CCRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA