1  TRACY L. WILKISON
   United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   JOSEPH D. AXELRAD (Cal. Bar No. 274580)
4  JEFFREY M. CHEMERINSKY (Cal. Bar. No. 270756)
   Assistant United States Attorneys
5  Violent & Organized Crime Section
        1300 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-6520
        Facsimile: (213) 894-0142
8       E-mail:    Jeffrey.chemerinsky@usdoj.gov

9  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

10                  UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12
   UNITED STATES OF AMERICA,          No. CR 20-293-AB
13
             Plaintiff,               GOVERNMENT'S CONSOLIDATED
14                                    OPPOSITION TO DEFENDANT'S IN
                  v.                  LIMINE MOTIONS TO PRECLUDE
15                                    JAILHOUSE INFORMANT TESTIMONY
                                      REGARDING DEFENDANT'S UNCHARGED
   PAUL GARY WALLACE,                 MURDERS (CR 122); TO PRECLUDE
16                                    PORTIONS OF HIS FEBRUARY 8, 2016
             Defendant.               STATEMENT TO LAW ENFORCEMENT (CR
17                                    126); TO PRECLUDE EVIDENCE OF
                                      WALLACE BOP CALLS FROM MARCH 17,
18                                    2016 AND APRIL 26, 2017 (CR 130);
                                      TO PRECLUDE EVIDENCE OF COUNT 1
19                                    OVERT ACT (CR 120); TO PRECLUDE
                                      STATEMENTS REGARDING SHOOTING
20                                    EVERYONE, DEVIL WORSHIP AND ANIMAL
                                      ABUSE (CR 125); PRECLUDE OR LIMIT
21                                    PORTIONS OF KEVMAC VIDEOS AND FOR
                                      PROPER NOTICE OF THE PORTIONS OF
22                                    THE VIDEOS THE GOVERNMENT INTENDS
                                      TO OFFER IN ITS CASE IN CHIEF (CR
23                                    124)

24                                    Hearing Date: January 6, 2021

25                                    Location:    Courtroom of the
26                                                 Hon. André Birotte

27

28

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorneys Joseph D. Axelrad and Jeffrey Chemerinsky, hereby files its opposition to Defendant's *In Limine* Motions to Preclude Defendant's Confession to Uncharged Murders to the Jailhouse Informant (CR 122); Preclude Portions Of His February 8, 2016 Statement To Law Enforcement (CR 126); Preclude Evidence Of Wallace BOP Calls From March 17, 2016 and April 26, 2017 (CR 130); Preclude Evidence of Count 1 Overt Act 26 (CR 120); Preclude Statements Regarding Shooting Everyone, Devil Worship and Animal Abuse (CR 125); Preclude or Limit Portions of KevMac Videos and for Proper Notice of the Portions of the Videos the Government Intends to Offer in its Case in Chief (CR 124).

The government's opposition is based on upon the attached memorandum of points and authorities and any other evidence or argument that the Court may wish to consider.

Dated: December 16, 2021     Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
JEFFREY CHEMERINSKY
JOSEPH D. AXELRAD
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**Table of Contents**

I.   INTRODUCTION...................................................1

II.  STATEMENT OF RELEVANT FACTS...................................3

     A.   Background Facts on Relevant Evidence from the
          Indictment...............................................3

III. ARGUMENT......................................................4

     A.   General Framework for Addressing Defendant's Motions......4

     B.   Government's Specific Responses to Defendant's Motions....7

          1.   Defendant's 2016 Post-Arrest Statements Are
               Specific, Highly Relevant, and Admissible (CR
               126).................................................7

          2.   BOP Recorded Calls from March and April 2016 Are
               Admissible (CR 130).................................9

          3.   Defendant Statements to CW-3 About Additional
               Murders (CR 122)...................................11

          4.   Defendant's Statements in YouTube Interviews with
               KevMac (CR 120, 125, 124)..........................13

IV.  CONCLUSION...................................................17

1

**Table of Authorities**

2

<u>Federal Cases</u>

3

4

<u>United States v. Bonanno</u>,
  467 F.3d 14 (9th Cir. 1972) ....................................... 5

5

<u>United States v. Dodds</u>,
  347 F.3d 893 (11th Cir. 2003) .................................... 6

6

<u>United States v. Hankey</u>,
  203 F.3d 1160 (9th Cir. 2000) .................................... 6

7

<u>United States v. Meester</u>,
  762 F.2d 867 (11th Cir. 1985) .................................... 6

8

<u>United States v. Patterson</u>,
  819 F.2d 1495 (9th Cir. 1987) .................................... 6

9

<u>United States v. Rizk</u>,
  660 F.3d 1125 (9th Cir. 2011) .................................... 4

10

<u>Williams v. Artus</u>,
  2013 WL 4761120 (E.D.N.Y. 2013) ................................. 5

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3           The Court should deny defendant Paul Gary WALLACE's

4    ("defendant") various motions that seek to keep out his own crucial

5    admissions about the East Coast Crips ("ECC") and his prior acts of

6    violence in furtherance of the ECC.[1]  As set forth below, the

7    government opposes defendant's motions, when the statements at issue

8    (1) are relevant to proving the enterprise alleged or (2) are

9    relevant to proving the violent acts, including murders, engaged in

10   by defendant or others in the enterprise.  The government does not

11   oppose defendant's motions when they seek to exclude evidence outside

12   those two categories, such as statements about devil worship or

13   animal mutilation.

14          Defendant's own statements about acts of violence he has

15   committed on behalf of the gang are clearly relevant to proving his

16   participation in the charged enterprise and his agreement to engage

17   in the enterprise's criminal acts.  Any statements that show his

18   involvement in the gang are relevant to both proving the existence of

19   the enterprise and his participation in it.  As the Court is aware,

20   this case arises from defendant's role as the violent shot caller of

21   the ECC gang.  Indeed, the government anticipates testimony from a

22   variety of witnesses at trial who will describe defendant as one of,

---

24          [1] In total, defendant has filed six motions that all seek to keep out his own statements.  (CR 122 [Motion to Exclude Statements
25   to [CW-3], Jailhouse Informant About Murders], CR 126 [February 2016 Post-Arrest Statements], CR 130 [Select BOP Calls]; CR 120 [Evidence
26   of Count 1 Overt Act 26]; CR 125 [Preclude Statements Regarding Shooting Everyone, Devil Worship and Animal Abuse]; CR 124 [Preclude
27   or Limit Portions of KevMac Videos and for Proper Notice of the Portions of the Videos the Government Intends to Offer in its Case in
28   Chief].

if not the most powerful, leaders of the ECC.  The indictment alleges
that the ECC is a criminal enterprise that conspired to, among other
things, commit "multiple acts of murder."  To prove defendant's guilt
at trial of the RICO charge the government will be required to prove
the following elements, among others: (1) the existence of an
enterprise that engaged in a pattern of racketeering activity; (2)
the specific racketeering activity engaged in by the enterprise,
including murders; (3) defendant's participation in the enterprise;
and (4) defendant's agreement in the type of racketeering activity
engaged in, including murders.  Each of these will be required to be
proven beyond a reasonable doubt.

In light of these elements, there is clear and significant
relevance to statements from the defendant that show either (1) his
participation in the criminal enterprise alleged (the ECC) and (2)
his, and the enterprise's, participation (or agreement to
participate) in acts of violence.  Nonetheless, defendant's motions
to exclude his own statements generally ignore the nature of this
prosecution, and attempt to portray it *only* as a murder case based
entirely on the murders of Raymond Pickett and Reginald Brown.  As an
initial matter, several of the statements from defendant are directly
related to those murders, for example, statements about the murder
weapon or statements about committing murders that clearly encompass
those murders.  Moreover, defendant's arguments ignore the broad
nature of the RICO conspiracy allegations against him and the
evidence that is relevant to prove those allegations.  Based on well-
established precedent, in proving the RICO conspiracy alleged the
government is not limited to acts alleged in the indictment.  In
other words, defendant's argument that these statements allege crimes

not detailed in the indictment is simply incorrect as a matter of law as the Ninth Circuit has made clear that the government is not limited to overt acts alleged in the indictment.

Given the RICO enterprise alleged, and the specific allegation that it engages in murders, there is clear relevance to hearing defendant speak about his and the ECC's involvement in acts of violence, including murder.  Defendant's own admissions to committing murders are highly relevant to proving that murder was one of the crimes engaged in by the criminal enterprise and that defendant agreed with it.  Defendant's confessions that he has committed murders is also direct evidence of the violent acts charged in the indictment, namely, the 2003 murder of Raymond Pickett and 2014 murder of Reginald Brown.

## II. STATEMENT OF RELEVANT FACTS

### A. Background Facts on Relevant Evidence from the Indictment

The indictment in this case alleges a broad RICO conspiracy, conducted by the ECC, with defendant at the center as the longtime leader of the gang.  In particular, the RICO Conspiracy alleges defendant's participation in the 2003 murder of Raymond Pickett and the 2014 murder of Reginald Brown.  (Dkt. 1, Count 1, Overt Acts 5, 9, 10; Count 2.)  The indictment alleges the ECC to be involved in, among other things, "acts involving murder, robbery, extortion, and witness intimidation."  (Id.)  The purposes of the enterprise includes "[m]aintaining ECC control and authority over its territory, often through threats, intimidation and acts of violence committed against local residents and rival gangs; and violently retaliating against rival gang members or perceived outsiders who challenged ECC authority."  (Indictment, Count One, ¶ 10.)  The "Means" section of

1   the Indictment, alleges that "Members and associates of the ECC gang

2   committed, and conspired, attempted, and threatened to commit acts of

3   violence to protect and expand the enterprise's criminal operation,

4   including assaults, murders, acts of intimidation, and threats of

5   violence directed against rival gang members and witnesses in

6   criminal cases[.]"

7   **III. ARGUMENT**

8       **A.   General Framework for Addressing Defendant's Motions**

9       Defendant does not dispute that there is a sufficient foundation

10  for his statements or that they are admissible as non-hearsay because

11  they are defendant's statements.  Defendant makes only three

12  challenges:  the statements are non-specific, character evidence, and

13  unduly prejudicial.  Each of the arguments should be rejected.

14      As part of his various motions, defendant seeks to preclude four

15  separate categories of admissions: (1) defendant's statements from

16  his 2016 post-arrest interview; (2) defendant's statements in

17  recorded calls while in federal custody in March and April 2016; (3)

18  defendant's statements to CW-3[2] while in federal custody about

19  murders; and, finally, (4) defendant's statements in interviews

20  posted on Youtube.

21      As a general matter, defendant's arguments that these admissions

22  are not specific because they are untethered to specific crimes

23  alleged in the indictment fails for a number of reasons.  First, the

24  government is not bound to only proving the specific overt acts

25  alleged in the indictment.  "The rule is well established that the

26  government in a conspiracy case may submit proof on the full scope of

27

28  _____

    [2] Defendant's motion refers to this witness by initials.

4

the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." United States v. Rizk, 660 F.3d 1125, 1131 (9th Cir. 2011).  The Ninth Circuit has also explained:  "One of the charges in the indictment alleged conspiracy.  In conspiracy prosecutions, the Government has considerable leeway in offering evidence of other offenses [not charged in the indictment]." United States v. Bonanno, 467 F.3d 14, 17 (9th Cir. 1972).  Separately, That certain statements are not alleged as specific overt acts in the indictment is simply not a basis for exclusion.[3]  Second, defendant's arguments are especially misguided in light of the RICO conspiracy alleged.  The government needs to prove defendant agreed that members of the conspiracy would commit murders.  Defendant's admissions to shootings and murders are direct evidence of that agreement.  Third, and finally, as described further below, many of these statements are also relevant to proving defendant's commission of the violent acts (namely, the murders of Pickett and Brown) that are specifically alleged in the indictment.  Defendant's admission to murders, of course, encompasses these murders.

Similarly, defendant's statements, especially in the YouTube videos about the ECC, his membership in the ECC, ECC history, and

---

[3] Defendant's repeated citation to Williams v. Artus, 2013 WL 4761120, 11-CV-5541 (E.D.N.Y. 2013), actually supports the government's position because that case is so readily distinguishable.  In Williams, the defendant was charged with depraved indifference murder.  Id. at *1.  There was no conspiracy or enterprise alleged.  The witness's statements about other crimes committed by defendant fell well outside the scope of the alleged crimes in that case.  By contrast, here, defendant's offenses fall squarely within the scope of the crimes alleged in the indictment. There is no merit to the argument that presenting this evidence is prosecutorial misconduct or a miscarriage of justice.  There is no basis for the argument that evidence admissible under the rules of evidence and relevant to the RICO conspiracy charged is otherwise misconduct or would result in a miscarriage of justice.

violent acts of the ECC are relevant to show the existence of the alleged enterprise and defendant's membership in the enterprise. Indeed, it is highly relevant of defendant's elevated place in the ECC that defendant can provide such a detailed history of the gang.

Based on the reasons set forth above, defendant is simply incorrect that his own statements constitute character evidence or 404(b) evidence. Defendant's description of the ECC and his involvement in violence on behalf of the ECC fall squarely into the allegations of the indictment. They are not separate or distinct from the conspiracy alleged.

Defendant's admissions to acts of violence are also relevant in that shows defendant attempting to maintaining his position of authority and respect within the enterprise by bragging about his willingness to commit acts of violence, which is a type of currency within the gang.

Finally, as to defendant's Federal Rule of Evidence 403 arguments, the Ninth Circuit has made clear that "[Rule] 403 favors admissibility," United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000), and that excluding evidence under Rule 403 is an "extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." United States v. Patterson, 819 F.2d 1495, 1504 (9th Cir. 1987) (quoting United States v. Meester, 762 F.2d 867, 875 (11th Cir. 1985)); see also United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003) ("We have also recognized that Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance . . . should be struck in favor of admissibility."). Given the relevance of these

statements to the conspiracy alleged, there is no basis to find that they are *unfairly* prejudicial.

Based on this general framework, the government analyzes each of the specific statements at issue.

**B.   Government's Specific Responses to Defendant's Motions**

    **1.   Defendant's 2016 Post-Arrest Statements Are Specific, Highly Relevant, and Admissible (CR 126)**

        ***a.   Factual Background***

In February 2016, defendant was arrested and charged with felon in possession of firearms. <u>United Stated v. Paul Gary Wallace</u>, CR 16-00083-AB. Following his arrest, defendant waived <u>Miranda</u> and agreed to be interviewed by law enforcement. During the recorded interview, defendant made several statements, including acknowledging his participation in murders, stating "It's simple stuff . . . You can get him. Before it's me out there, like 'Go hit the Swans. What ya'll doing? Get the Broadways, the ally. . . Man, I told God I'd never kill *again*. I'd never give a bullet to nobody because the Holy Spirit told me, when you give bullets you give guns. It's just like you're doing the murder still."

At trial, the government will present evidence that "Swans" is a reference to the Mad Swan Bloods, and "Broadways" is a reference to the Broadway Gangster Crips – both sworn enemies and rivals of defendant's East Coast Crips.

        ***b.   These Statements Are Admissible***

Defendant's February 2016 admission, "Man, I told God I'd never kill again," is direct evidence of the RICO conspiracy, and his participation in its criminal acts, and of the murders to which defendant is alleged to have been involved. Evidence is relevant if

1  it has "any tendency to make the existence of any fact that is of

2  consequence to the determination of the action more probable or less

3  probable than it would be without the evidence."  Fed. R. Evidence

4  401.

5      Contrary to defendant's argument, his February 2016 admission –

6  "Man, I told God I'd never kill again" – necessarily encompasses the

7  2003 and 2014 murders charged in the indictment.  A fair analogy is

8  that a defendant charged with a bank robberies admits that he has

9  robbed banks or is part of a bank robbery crew – such a confession,

10 even if he does not identify the specific bank(s) he has robbed, is

11 clearly relevant because the confession encompasses the charged

12 conduct.

13     Second, defendant's statements about past acts of violence are

14 generally relevant to show defendant's involvement in the gang's

15 criminal activities, namely, acts of violence (including murder) as

16 alleged in the Indictment.  Although defendant attempts to cast this

17 admission as a generic statement, the context makes clear that

18 defendant was discussing gang murders.  At the point in the interview

19 when these statements were made, defendant was engaged in a

20 conversation regarding gang-warfare, and specifically, gang-related

21 murders ("Before it's me out there, like 'Go hit the Swans.  What

22 ya'll doing?").  Taken together, defendant's statements are a

23 description of his and the ECC's historic practice of murdering their

24 rivals.  These statements are, therefore, direct evidence of his

25 personal participation in the RICO enterprise, the ECC's use of

26 murder in furtherance of the enterprise, and his own participation in

27 murders – including those alleged in the indictment.

28

2. **BOP Recorded Calls from March and April 2016 Are Admissible (CR 130)**

a. *Factual Background*

In 2016, while in custody on his felon in possession of firearms charge, defendant continued his participation and involvement in the RICO enterprise.  Specifically, on March 17, 2016, defendant spoke on a recorded line and discussed how the AK-47 assault rifle recovered from his rented Toyota Sienna minivan had been used in a murder. (Indictment, Overt Act 19.)  The following month, on April 26, 2016, defendant confirmed to a different individual that the AK-47 assault rifle had been used in a murder.  (Indictment, Overt Act 20.)  In both instances, the government understands that defendant was speaking with family members.

b. *These Statements Are Admissible*

During these recorded calls with family members, defendant explained that the AK-47 assault rifle found in his Toyota Sienna minivan had been used in a murder.  Of course, the ballistics examination that connected the AK-47 assault rifle to the murder of Reginald Brown did not occur for another two years.  Defendant's knowledge that this very firearm had been used in a murder, and his repeated and vocalized unwillingness to admit possession of this firearm, is direct evidence of defendant's involvement in the murder of Reginald Brown.  Defendant is identifying the murder weapon used in the murder and stating he knew it was used in a murder.

In an attempt to prevent the government from admitting his own statements, defendant claims he was only "repeating multi-layered hearsay based on conversations with his attorney about plea negotiations with government counsel on the pending gun possession

9

1  and hearsay gossip he had heard in the community." (CR 130, at 4.)

2  Defendant is misguided. As noted above, the ballistics examination

3  had not yet connected the AK-47 with Reginald Brown's murder – making

4  it impossible that defendant was repeating information provided to

5  him during plea negotiations. Further, no discovery at all had been

6  produced to defendant in that prior case tying the AK-47 to the

7  murder of Reginald Brown.

8       Fundamentally, the suggestion that defendant was merely

9  repeating "multi-layered hearsay" from the community is entirely

10  unsupported conjecture and should be rejected outright.[4] There is

11  nothing from the statements themselves that indicate that they are

12  based on hearsay rather than defendant's personal knowledge.[5]

13       Nevertheless, defendant erroneously contends that nothing about

14  these statements suggests his involvement in the 2014 murder of

15  Reginald Brown. (CR 130, at 5-6.) The plain facts are that the AK-

16  47 assault rifle used in Reginald Brown's murder was found in

17  defendant's minivan approximately eight months after the shooting.

18  Less than a year later, and well before any forensic testing had been

19

20

21

22

23       [4] Even assuming, *arguendo*, that defendant heard about the AK-
   47's use in a murder through "multi-layered hearsay" this is not a
24  basis to exclude his statements. Were it to be the case that
   defendant learned from gossip that the AK-47 *located in his car* was
25  used to murder a rival Hoover Criminal gang member, it would at least
   be probative and relevant of defendant's continued participation in
26  the ECC enterprise, including while in custody at the Metropolitan
   Detention Center.

27       [5] That the statements are based on personal knowledge is also
   supported by defendant's statements to cooperating witnesses in which
28  he described driving other gang members to commit this murder and
   identified the AK-47 as the murder weapon.

completed, defendant confided in two separate family members that that AK-47 had been used in a murder.[6]

Of course, this evidence is also directly relevant to rebutting the likely cross-examination of the cooperating witnesses at trial. The cooperating witnesses will describe defendant's leadership of the RICO enterprise, the ECC's participation in acts of violence (including murder), defendant's own participation in murders, and, specifically, admissions defendant made regarding his involvement in the 2003 and 2014 murders charged in the indictment.

The jury should be permitted to hear this highly probative, specific, and admissible evidence.

### 3.   Defendant Statements to CW-3 About Additional Murders (CR 122)

#### a.   Factual Background

CW-3 had been housed with defendant at MDC while defendant was held there following his 2016 federal felon in possession charge.[7] According to CW-3, during their stay at MDC together, defendant made several efforts to win CW-3's favor because of various jail politics and CW-3's history of violence in custody.  As a result, defendant bragged to CW-3 that defendant had orchestrated a murder a couple of years ago of a Hoover gang member known as "Red."[8]  Defendant went on to provide defendant with various specific details of the murder and, in particular, details that were otherwise unknown to the public

---

[6] As discussed above, the government's burden goes well beyond defendant's participation in the charged murder and includes proof of the RICO enterprise and acts of violence perpetrated on behalf of the ECC.

[7]  The government has obtained documents showing, that defendant and CW-3 were housed together at MDC from March 18 to May 2, 2017.

[8]  Testimony at trial will address how Reginald Brown's gang moniker was "Red."

and/or have been corroborated by other parts of the investigation. CW-3 will testify at length about defendant's confession to his involvement in this murder, that is, the murder of Reginald Brown on November 13, 2014.

According to CW-3, defendant boasted to him that he was in charge of the entire "6-Pacc" of East Coast Crips.

CW-3 further explained that defendant claimed that during an approximate four-year period defendant had personally killed seven people himself and had ordered the murders of several others.

### b. Defendant's Statements to CW-3 Are Admissible

Defendant seeks to exclude his own admissions about conducting numerous murders and ordering other murders. As background, the government will lay a foundation for these statements that defendant and CW-3 spoke at length about prior gang activity. CW-3 entered custody with substantial gang bona fides, specifically, he was the son of a prominent gang member, had been sentenced to a very lengthy federal sentence, and was at MDC awaiting trial on a stabbing he had committed while in federal custody against someone who had accused him of cooperating with law enforcement. Defendant in turn was attempting to establish his own gang bona fides. Defendant's admissions about additional murders are clearly relevant for all of the reasons set forth above to establish his agreement to the criminal acts set forth above. That the government has not alleged additional murders in the indictment are arguments defendant can make in summation as that goes to the weight, and credibility of the statement, and not the admissibility. The law is clear that the fact that the acts are not alleged as overt acts is not a basis for exclusion.

1
2

### 4.   Defendant's Statements in YouTube Interviews with KevMac (CR 120, 125, 124)

3      In 2019, defendant sat down for a series of YouTube interviews

4 with an internet personality known as "KevMac" to discuss his life in

5 the ECC.  This interview was part of a series posted to YouTube and

6 publicly available that was conducted by KevMac of "Legendary Bloods

7 and Crips" gang members.  Throughout this interview, defendant

8 describes at length his background in the gang and acts of violence

9 he has committed in furtherance of it.  In general, the government

10 breaks down the statements from these interviews that it intends to

11 introduce as follows:  (1) statements about the gang (i.e., the

12 enterprise) and/or that show defendant's participation in it; and (2)

13 statements about acts of violence on behalf of the gang.  Statements

14 that are not in either of these two categories the government will

15 agree not to introduce at this time.  For example, the government

16 does not intend to introduce statements about defendant's devil

17 worship or his past animal mutilation.  Additionally, the government

18 will play excerpts of these interviews rather than hours of

19 interviews, which although relevant to show the history of the

20 enterprise, would be an inefficient use of Court time.

21      From a procedural standpoint, the government asks that the Court

22 generally rule as follows:  (1) the government may admit statements

23 about defendant's violent acts; and (2) the government may admit

24 statements about the enterprise, its background, and defendant's

25 membership.  The Court should then order the government to provide

26 its final clips, consistent with the Court's ruling, by January 8,

27
28

1   2022,[9] with any final defendant's objections due by January 11, 2022,

2   and the government's responses due January 12, 2022.  The Court can

3   then address these at a final pretrial conference on January 14,

4   2022.  Such a procedure avoids serial rulings on the same material

5   and allows the parties to make targeted objections with the Court's

6   guidance in mind.[10]

7

8       [9] This is two days after the January 6, 2022 hearing on this
    motion.  The government has proposed this schedule as it seems the
9   fastest this can possibly be accomplished.  However, the government
    is open to other iterations of it.  The government can also provide a
10  summary chart with its clips that describes the relevance of each
    segment proposed.  Defendant can then insert his objections to this
11  table or chart, which can be presented as a joint filing to the
    Court.

12      [10] The motion (CR 124, in particular) seeks to exclude whole
    segments that, for example, touch on his initiation into the gang,
13  the history of the gang, or have other relevance.  Defendant provides
    limited analysis beyond citing blanket objections and rules of
14  evidence.  This invites a piecemeal approach that is inefficient for
    the parties and the Court.  Moreover, the government intends to play
15  the interview clips efficiently, which avoid any cumulative effect
    and may moot some, or many, of these issues.

16      For example, defendant seeks to exclude the entirety of Part 1,
    entitled "Joining 69 Neighborhood East Coast Crips." (CR 124, p.
17  2.)  However, at the very start of that clip, at approximately the 1-
    minute mark, KevMac says introduce yourself and defendant responds
18  "man, I'm Lil Doc, aka Lil Doc Thone, 69th Street Neighborhood
    Eastside, East Coast Crips."  KevMac then asks "how did you and East
19  Coast come about."  Defendant responds that his family moved from
    Louisiana to south Los Angeles.  KevMac asks how defendant got the
20  name "Lil Doc," and defendant explains that history, at approximately
    the 2-minute mark.  Then at the 3-minute mark defendant explains how
21  his crew became the 69.  Then defendant explains when he met "Big
    Doc" and that history.

22      All of that background is highly relevant to the enterprise and
23  defendant's role, and ignored in defendant's motion.  Defendant
    generally objects to the entire video and specifically objects to a
24  quick portion in the middle of the segment described above (at the
    2:45 mark) in which defendant mentions "camps."  (Objection i, p. 2.)
25  This is a quick reference ("a lot of us went to camps").  It has no
    danger of unfair prejudice, and comes in the middle of a history of
26  the formation of the gang and defendant's membership.  However,
    litigating all this out now in an opposition to defendant's list-
27  style objections would be inefficient for the Court, invite brand new
    objections in a reply brief and further responsive briefing.   It
28  would invite both parties and the Court to spend unnecessary time and
                                                    *(footnote cont'd on next page)*

                                    14

### a. Defendant's Admissions to Acts of Violence Are Relevant and Admissible

Throughout these interviews defendant makes several admissions to acts of violence. For example, as alleged in Overt Act 26, he admits that "I'm killing, I'm going to hell, He said you [U/I] shall not kill, I done kill . . . I done kill few motherfuckers, so I know I'm going to hell," and, in referring to a rival gang member, said "he was killing like a motherfucker like me . . . and I'm like damn, they putting in work, they got murders under their belt like a motherfucker, I got murders under my." At other points, defendant admits shooting rivals and wanting to shoot rivals. At another point defendant says if someone harmed "Big Bob," he would have to commit five more murders.

Each of these statements are highly and directly relevant to proving that murder was one of the crimes engaged in by the criminal enterprise and that defendant agreed with that. These are each statements about defendant's involvement in violent crimes in furtherance of the criminal enterprise alleged. There is no basis to exclude them simply because defendant did not identify the specific murders he is describing. Considering the RICO allegations against him the jury is entitled to hear of defendant's own participation in violent acts in furtherance of the RICO enterprise. As described above, this is not just a murder case but a RICO conspiracy, and any

energy parsing each video, without first receiving general guidance from the Court.

A more narrowed and tailored approach, taking the Court's rulings into account, will allow the parties (and the Court) to focus attention and energy on the portions that matter and are subject to objection.

15

violent acts in furtherance of the alleged enterprise has great evidentiary weight.

Defendant's confession in the videos that he has committed murders is also *direct* evidence of the violent acts charged in the indictment which are two of the murders he is specifically alleged to have committed, as those confessions to murder encompasses the murders included in the indictment.

Finally, these statements are also relevant to proving the enterprise and defendant's role because defendant's bragging about acts of violence are part of his attempt to establish his stature, seniority, and role within the gang. When he is bragging about his acts of violence and his willingness to resort to acts of violence, he is also bragging about what a fearsome and seasoned gang leader of the ECC he is.

### b. *Defendant's Statements About Gang History and His Initiation Are Relevant to the Enterprise*

Next, any statement that defendant made that shows the history of the gang, its structure, and defendant's initiation and membership of it are clearly relevant considering the allegations at issue. The government needs to prove both the existence of a criminal enterprise and defendant's membership in it. Defendant's recital of an oral history of the gang is clearly relevant to proving the enterprise. Further, the jury is clearly going to understand from several of these statements that defendant is not the person responsible for these acts. Nonetheless, defendant's ability to provide an oral history of the gang is valuable in showing just how deep into the gang he is and directly relevant to proving his stature and position in the enterprise.

     ***c. The Government Does Not Intend to Introduce Clips that Do Not Relate to His Participation in Violent Acts or the Enterprise***

  The government does not intend to introduce evidence in its case-in-chief about devil worship, animal mutilation, or gang rapes in the jail.  Clips of these statements will not be included in the final list of YouTube clips the government proposes.

**IV. CONCLUSION**

  For the foregoing reasons, the government respectfully requests that the Court deny defendant's motions in limine.