TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFFREY M. CHEMERINSKY (Cal Bar No. 270756)
JOSEPH D. AXELRAD (Cal. Bar No. 274580)
Assistant United States Attorneys
Violent & Organized Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6520
    Facsimile: (213) 894-0141
    E-mail:   jeffrey.chemerinsky@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-293-AB |
|---|---|
| Plaintiff, | [PROPOSED] TRIAL INDICTMENT |
| v. | Trial Date: April 1, 2022 |
| PAUL GARY WALLACE,<br>  aka "Doc,"<br>     "Lil Doc,"<br>     "Lil Doc Thone,"<br>     "Bill,"<br>     "Uncle Bill," and<br>     "Still Bill,"<br><br>          Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jeffrey M.

Chemerinsky and Joseph D. Axelrad, hereby file a proposed trial indictment.

Dated: March 28, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

   /s/
JEFFREY M. CHEMERINSKY
JOSEPH D. AXELRAD
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>PAUL GARY WALLACE,<br>  aka "Doc,"<br>      "Lil Doc,"<br>      "Lil Doc Thone,"<br>      "Bill,"<br>      "Uncle Bill," and<br>      "Still Bill,"<br><br>        Defendant. | I N D I C T M E N T<br><br>[18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. §§ 924(c)(1)(A)(ii), (iii): Use and Carry a Firearm During and in Relation to, and Possess a Firearm in Furtherance of, a Crime of Violence] |

GENERAL ALLEGATIONS

At times relevant to this Indictment:

A.    THE ENTERPRISE

    1.    Defendant PAUL GARY WALLACE, also known as "Doc," "Lil Doc," "Lil Doc Thone," "Bill," "Uncle Bill," and "Still Bill," and others known and unknown to the Grand Jury, were members and associates of an organization engaged in, among other things, trafficking and conspiracy to traffic in narcotics and controlled substances, and acts involving murder, robbery, extortion, and witness intimidation. This organization, known as the "East Coast

Crips" ("ECC"), operated in the Central District of California and elsewhere. The ECC, including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The ECC engaged in, and its activities affected, interstate and foreign commerce. The East Coast Crips constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

B.  BACKGROUND OF THE RACKETEERING ENTERPRISE

2. The ECC gang was a violent street gang that claimed a large portion of South Los Angeles, from approximately 1st Street to 190th Street, between the 110 Freeway and Central Avenue. The ECC gang existed since the late 1970s and was composed of smaller groups known as "sets." Thirteen primary sets of the ECC (1, 59, 62, 66, 68, 69, 76, 89, 97, Q102, 118, 190, 1200), with a total combined membership of more than approximately 850 members, operated in and around the Los Angeles area. The "sets" operated under the umbrella rules of the ECC.

3. The ECC gang's sets controlled territories throughout the city and tended to operate within those areas on a day-to-day basis. All of those entities, however, claimed membership in, and respected the overarching and encompassing parent gang of, the ECC. Often each set of the ECC would sell drugs and conduct robberies and other crimes with members of their respective sets in and around their turf, but would also intermingle with other members from the various ECC sets. The 62, 66, 68, and 69 sets of ECC were collectively referred to as the "6 Pacc."

4. The ECC gang most commonly aligned with the Rollin' Crips sets, Neighborhood Crips sets, and some motorcycle clubs, such as the Deuces and Sin City Disciples. The ECC associated with several smaller gangs such as the 71 and 74 Hustlers, Drugs N Alcohol, and multiple Gangster Crips sets.

5. The ECC gang had long-standing rivalries with certain other gangs. In particular, the ECC most commonly fought with Hoover Criminals and Hoover Crips sets, Main Street Crips, Broadway Gangster Crips, Mad Swan Bloods, Pueblo Bishop Bloods, Avalon Park Bloods, and Florencia 13.

6. The ECC gang regularly engaged in a variety of violent crimes including assaults, robberies, home invasion burglaries, bank robberies, firearms violations, narcotics distribution and sales, witness intimidation, extortion, and murder. Members of the gang also engaged in vandalism, prostitution, vehicle theft, and identity theft. The sales of illegal narcotics (most commonly powder cocaine, crack cocaine, and marijuana), as well as robberies and home invasion burglaries (known as "floccing"), provided the primary source of illicit income for the ECC gang and its members.

7. ECC members frequently "tagged" graffiti to mark their territory. ECC members commonly got tattoos of symbols of the ECC gang including the letters "E" and "C" or "EC" or "ECC" to represent "East Coast Crips," "N" and "H" to represent "Neighborhood Crips," "ES" to represent "East Side," the corresponding numbers of the ECC set in which they claimed membership (such as 62, 69, 97, 118, etc.), "BK" to represent "Bloods Killer" and "FK" or "Flower Killer" to represent "Florencia 13 Killer," depictions of devils and skulls,

depictions of the 110 Freeway sign, and depictions of stacks of money, money bags, and dollar symbols.

8. The ECC gang was loosely structured with a range of ranks/roles, including "OGs" (Original Gangsters) and "Big Homies," as well as "YGs" (Young Gangsters). "OGs" and "Big Homies" had respect and authority in the gang, provided leadership, direction, and guidance to the younger members, could order gang meetings, shootings, and internal discipline, and often provided the supply, connections, and locations to sell and stash narcotics and firearms for the gang, such as small businesses and houses or apartment units. "YGs" generally carried out the day-to-day operations of the gang by way of intimidation, armed protection of their neighborhood and drug territory from rivals, conducting robberies, burglaries, and fraud schemes, retaliatory shootings, transportation and sales of narcotics and firearms, and the operation of gang hangout and stash locations. The ECC "YGs" were also referred to as "Foot Soldiers," "Thugs," "Shooters/Gunners," "Dope Boys" and "Floccers."

9. ECC maintained a presence within jails and prisons within California. Within the jails and prisons in California, ECC members banded together to carry out acts of violence against individuals who were believed to be cooperating with law enforcement, to protect against rivals gangs, and to control the distribution of narcotics within the jails and prisons. To accomplish these goals, ECC members frequently maintained weapons within the jails for the purposes of protection and for use in assaults against individuals believed to be cooperating.

C. **PURPOSES OF THE ENTERPRISE**

10. The purposes of the ECC enterprise included, but were not limited to, the following:

    a. Enriching members and associates of the ECC through the control of and participation in the distribution of narcotics within ECC territory, extortion, as well as through engaging in armed robberies of local citizens, businesses, and banks;

    b. Preserving, promoting, and protecting the power, territory, and profits of the ECC and its members and associates;

    c. Exposing and punishing ECC members and associates who were perceived to have violated ECC codes of conduct;

    d. Maintaining ECC control and authority over its territory, often through threats, intimidation and acts of violence committed against local residents and rival gangs; and

    e. Violently retaliating against rival gang members or perceived outsiders who challenged ECC authority.

D. **THE MEANS AND METHODS OF THE ENTERPRISE**

11. The means and methods by which members and associates conducted and participated in the conduct of the affairs of the ECC included the following:

    a. Members and associates of the ECC gang committed, and conspired, attempted, and threatened to commit acts of violence to protect and expand the enterprise's criminal operation, including assaults, murders, acts of intimidation, and threats of violence directed against rival gang members and witnesses in criminal cases, and to violently discipline insubordinate members of the enterprise.

        b.    Members and associates of the ECC gang maintained firearms and ammunition for use in gang-related violence and for protection against rivals.

        c.    Members and associates of the ECC gang promoted a climate of fear, through acts of violence and threats to commit acts of violence.

        d.    Members and associates of the ECC gang engaged in drug trafficking, gun trafficking, and extortion as a means to generate income.

        e.    Members and associates of the ECC gang frequently engaged in the aforementioned criminal activity in the presence of other ECC gang members and/or associates in order to enhance the gang status of those directly conducting the criminal acts.  Members and associates of the ECC gang would provide instructions to the junior members committing crimes in their presence, would ensure the criminal acts were completed, and would provide verification to other ECC gang members that the crimes occurred.

COUNT ONE

[18 U.S.C. § 1962(d)]

Paragraphs 1 through 11 of the General Allegations are re-alleged and incorporated here.

A.   THE RACKETEERING CONSPIRACY

1.   Beginning on a date unknown, and continuing to on or about July 16, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant PAUL GARY WALLACE, also known as "Doc," "Lil Doc," "Lil Doc Thone," "Bill," "Uncle Bill," and "Still Bill," and others known and unknown to the Grand Jury, being persons employed by and associated with the ECC, an enterprise which was engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

    a.   Multiple acts involving murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 188, 189, and 664;

    b.   Multiple acts involving extortion, in violation of California Penal Code Sections 21a, 31, 182, 518, 519 and 664;

    c.   Multiple offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and

    d.   Multiple acts indictable under Title 18, United States Code, Section 1512, relating to tampering with a witness, victim, or informant.

2. It was a further part of the conspiracy that defendant WALLACE agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

B. **MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED**

The object of the conspiracy was to be accomplished in substance as follows:

1. Defendant WALLACE, who as of July 16, 2020, had been a senior leader of the ECC for approximately 30 years, and who, during relevant times, was the most influential member of the 6 Pacc of the ECC, would commit murder and conspire and attempt to commit murder in order to enhance the violent reputation of the ECC gang, to enhance his status within the gang, to retaliate against rival gang members, and to enforce discipline within the gang.

2. Defendant WALLACE would protect the gang's territory from rivals by carrying firearms and using violence, such as robberies, acts of intimidation, assaults, and shootings against the gang's rivals.

3. Defendant WALLACE would sell drugs within the ECC gang's territory.

4. Defendant WALLACE would maintain firearms and ammunition for his own use and to provide to other ECC members.

5. Defendant WALLACE would obtain weapons within the jails for use against rivals.

6. Defendant WALLACE would identify individuals who were cooperating against law enforcement and sanction violence against them.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish the object and purposes of the conspiracy, on or about the following dates, defendant WALLACE, and other members and associates of the ECC, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   In the late 1970s, defendant WALLACE was initiated into the 69th Street set of the ECC with the gang moniker "Lil Doc Thone."

Overt Act No. 2:   On or about February 9, 2003, within ECC territory, defendant WALLACE using a handgun, shot and murdered R.P., an ECC gang member who publicly disrespected defendant WALLACE.

Overt Act No. 3:   On or about July 26, 2006, within rival gang territory, defendant WALLACE possessed a loaded semi-automatic .380 caliber pistol.

Overt Act No. 4:   On or about January 23, 2009, within ECC territory, defendant WALLACE possessed six rounds of .38 caliber ammunition that he intended to provide to another ECC gang member.

Overt Act No. 5:   On or about September 25, 2011, within ECC territory, defendant WALLACE possessed .22 grams of cocaine.

Overt Act No. 6:   On or about November 13, 2014, defendant WALLACE drove a co-conspirator to R.B.'s residence in a white Cadillac Escalade, within rival gang territory, and provided the co-conspirator with a 7.62 caliber Norinco AKM-47S assault rifle, which the co-conspirator used to murder R.B.

Overt Act No. 7:   On or about November 13, 2014, defendant WALLACE told a cooperating witness, "We just knocked the fool Red down," in reference to the murder of R.B.

Overt Act No. 8:   On or about July 24, 2015, within a vehicle defendant WALLACE had rented, located near defendant WALLACE's residence, within ECC territory, defendant WALLACE possessed the 7.62 caliber Norinco AKM-47S assault rifle, which was loaded with 13 rounds of assorted ammunition and had been used to murder R.B.

Overt Act No. 9:   On or about February 5, 2016, at defendant WALLACE's residence, within ECC territory, defendant WALLACE possessed a CZ model 75 BD Police 9 mm caliber pistol, bearing serial number BF876; a Beretta unknown model 7.65 mm caliber pistol, bearing serial number 561440; seven rounds of 9 mm Luger caliber ammunition; 15 rounds of .38 caliber ammunition; approximately 621 gross grams of marijuana; and several pills of ecstasy, including pills that defendant WALLACE had attempted to flush down the toilet.

Overt Act No. 10:   On or about February 9, 2016, from a telephone within the Metropolitan Detention Center in Los Angeles, California, using coded language, defendant WALLACE discussed the extortion of a marijuana dispensary within ECC territory and the payment to defendant WALLACE of a portion of those proceeds.

Overt Act No. 11:   On or about February 10, 2016, from a telephone within the Metropolitan Detention Center, using coded language, defendant WALLACE told a co-conspirator that another ECC member would be "taking over everything" for defendant WALLACE while defendant WALLACE was in custody.

Overt Act No. 12:   On or about February 11, 2016, from a telephone within the Metropolitan Detention Center, using coded

language, defendant WALLACE told a co-conspirator the identity of an ECC member who was cooperating with law enforcement.

    Overt Act No. 13:  On or about February 12, 2016, from a telephone within the Metropolitan Detention Center, using coded language, defendant WALLACE discussed the extortion of a marijuana dispensary within ECC territory and the payment to defendant WALLACE of a portion of those proceeds.

    Overt Act No. 14:  On or about February 14, 2016, from a telephone within the Metropolitan Detention Center, using coded language, defendant WALLACE discussed with the owner of a marijuana dispensary in ECC territory the payment of proceeds to defendant WALLACE and the ECC member who would handle the collection while defendant WALLACE remained in custody.

    Overt Act No. 15:  On or about February 14, 2016, from a telephone within the Metropolitan Detention Center, using coded language, defendant WALLACE discussed with co-conspirators the extortion of a marijuana dispensary within ECC territory.

    Overt Act No. 16:  On or about March 17, 2016, from a telephone within the Metropolitan Detention Center, using coded language, defendant WALLACE told a co-conspirator that the assault rifle which defendant WALLACE possessed in a rented vehicle was used in a murder.

    Overt Act No. 17:  On or about April 26, 2016, from a telephone within the Metropolitan Detention Center, using coded language, defendant WALLACE told a co-conspirator that the assault rifle which defendant WALLACE possessed in a rented vehicle was used in a murder.

    Overt Act No. 18:  On or about December 15, 2016, from a telephone within the Metropolitan Detention Center, using coded language, defendant WALLACE told a co-conspirator, "Cuz, I'm so hot

man, Cuz . . . I was out there from 1st St. to 109, those niggas man, out of the way of me, Cuz," a reference to defendant WALLACE's position of power and influence within the ECC and over 10 ECC sets, including the 6 Pacc.

<u>Overt Act No. 19:</u>  On or about December 28, 2016, from a telephone within the Metropolitan Detention Center, using coded language, defendant WALLACE told a co-conspirator that "Any nigga get at me like that up in here or out there, nigga.  I'm gonna burn with a knife up in here and I'm gonna burn him with bullets out there . . . That's the real."

<u>Overt Act No. 20:</u>  On or about March 25, 2018, within the Metropolitan Detention Center, defendant WALLACE and a co-conspirator, who was a more junior member of ECC, possessed a homemade knife that had been sharpened.

<u>Overt Act No. 21:</u>  On or before April 18, 2018, within the Metropolitan Detention Center, a co-conspirator stole "protective order" documents to prove to defendant WALLACE that a senior member of ECC was cooperating with law enforcement against the co-conspirator, so that defendant WALLACE would approve of an assault against the senior member of the ECC.

<u>Overt Act No. 22:</u>  On or about April 18, 2018, within the Metropolitan Detention Center, defendant WALLACE discussed with the co-conspirator the plan for an assault against the senior member of ECC who was cooperating with law enforcement against the co-conspirator.

<u>Overt Act No. 23:</u>  In or about November 2019, in an interview about ECC, defendant WALLACE stated "I'm killing, I'm going to hell, He said you [U/I] shall not kill, I done kill . . . I done kill few

14

motherfuckers, so I know I'm going to hell," and, in referring to a rival gang member, said "he was killing like a motherfucker like me . . . and I'm like damn, they putting in work, they got murders under their belt like a motherfucker, I got murders under my."

D.  NOTICE OF SPECIAL SENTENCING ALLEGATIONS

The Grand Jury further alleges that:

1. On or about February 9, 2003, in Los Angeles County, within the Central District of California, defendant WALLACE and others known and unknown, aiding and abetting one another, willfully, deliberately, with premeditation and malice aforethought, killed victim R.P., in violation of California Penal Code Sections 31, 187, 188, and 189.

2. On or about November 13, 2014, in Los Angeles County, within the Central District of California, defendant WALLACE and others known and unknown, aiding and abetting one another, willfully, deliberately, with premeditation and malice aforethought, killed victim R.B., in violation of California Penal Code Sections 31, 187, 188, and 189.

COUNT TWO

[18 U.S.C. §§ 924(c)(1)(A)(ii), (iii), 2(a)]

On or about November 13, 2014, in Los Angeles County, within the Central District of California, defendant PAUL GARY WALLACE, also known as "Doc," "Lil Doc," "Lil Doc Thone," "Bill," "Uncle Bill," and "Still Bill," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly used, carried, brandished, and discharged a firearm, namely, a Norinco AKM-47S 7.62 caliber assault rifle, bearing serial number M001856, during and in relation to, and possessed that firearm in furtherance of, a crime of violence for which he may be prosecuted in a court of the United States, namely, murder in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(1).