STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFFREY M. CHEMERINSKY (Cal. Bar No. 270756)
Assistant United States Attorneys
Violent & Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6520
     Facsimile: (213) 894-3713
     E-mail:    Jeffrey.chemerinsky@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-293-AB |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR ACQUITTAL AND NEW TRIAL (CR 324); MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| PAUL GARY WALLACE, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jeffrey M. Chemerinsky, hereby files its Opposition to defendant PAUL GARY WALLACE Motion for a Judgment of Acquittal and New Trial.

//

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 15, 2022

Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

      /s/
JEFFREY M. CHEMERINSKY
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.   INTRODUCTION.....................................................1

II.  ARGUMENT.........................................................2

     A.   Defendant's Motions for a Judgment of Acquittal............2

          1.   Legal Standard for a Judgment of Acquittal...........2

     B.   The Court Should Not Disturb the Jury Verdicts.............3

III. The Court Should Also Deny Defendant's Request for a New
     Trial............................................................7

     A.   Legal Standard for a Motion for a New Trial................7

     B.   There Is No Basis to Disturb the Jury's Verdict............8

          1.   The Court Correctly Denied Defendant's
               Continuance Request..................................8

          2.   The Court Correctly Found the Evidence of
               Defendant's Involvement in Murder Was Admissible
               and Defendant's Proposed Limiting Instruction Was
               Confusing............................................9

          3.   The Voir Dire Process Was Adequate..................11

          4.   The Court Did Not Violate Defendant's
               Confrontation Clause Rights.........................12

          5.   The Court Did Not Deny Defendant a Meaningful
               Opportunity to Present His Defense..................13

IV.  CONCLUSION......................................................15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The Court should deny defendant PAUL GARY WALLACE's ("defendant") motion for a judgment of acquittal under Rule 29 or a new trial under Rule 33 (CR 324).  After a seven-day jury trial, defendant was convicted of one count of RICO Conspiracy, in violation of 18 U.S.C. § 1962(d), with a special allegation of murder, and one count of discharging a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), (iii).  There is no basis to disturb the jury's verdicts in this case.

The charges arose from defendant's leadership in the East Coast Crips gang.  The overwhelming evidence at trial proved defendant was a long-time leader of the East Coast Crips, a criminal enterprise, and that the gang engaged in racketeering activity including murder, extortion, drug trafficking, and witness tampering.  Indeed, defendant does not challenge the adequacy of that evidence.

In his post-trial motion, defendant raises essentially two types of arguments:  first, an adequacy challenge to the evidence of defendant's involvement in the murder of Reginald Brown, and, second, a variety of legal challenges (to the denial of a final trial continuance, the denial of a request for a limiting instruction and certain voir dire questions, limitations on cross examination, and a claim that defendant was denied his right to meaningfully present a defense) that were already brought before this Court and denied.  Both arguments fail.

As to defendant's first challenge (to the adequacy of the evidence), defendant applies the wrong legal standard, essentially

asking the Court to replace its judgment for that of the jury. The review on a post-trial motion gives substantial deference to the jury's verdict. In any event, defendant's guilt as to this murder was proven beyond a reasonable doubt. This evidence included a Cadillac Escalade matching defendant's Cadillac Escalade drove the shooter to the murder, the AK-style weapon used in the murder was found in defendant's vehicle (a van he had rented), defendant confessed his involvement in the murder to at least two individuals who testified, defendant made implausible denials and untruthful statements during his interview with law enforcement, and, finally, defendant had a motive to commit the murder of the victim, who was a rival gang member. This evidence proved defendant's guilty beyond a reasonable doubt and should not be disturbed.

As to the second set of challenges, defendant recycles arguments made during and prior to trial. Defendant makes no effort to address the Court's prior rulings and instead takes an omnibus-type approach of pointing to arguments previously made (and ruled upon) during the course of pretrial rulings. Those rulings, however, were each correct applications of the law and the Court's discretion. The Court should deny defendant's request for a new trial as well.

**II. ARGUMENT**

    **A.  Defendant's Motions for a Judgment of Acquittal**

        1.  <u>Legal Standard for a Judgment of Acquittal</u>

"The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." <u>United States v. Rocha</u>, 598 F.3d 1144, 1153 (9th Cir. 2010). The jury's verdict must stand if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

2

essential elements of the crime beyond a reasonable doubt." <u>United States v. Reed</u>, 575 F.3d 900, 923 (9th Cir. 2009) (quotation marks omitted). The test is well-established and longstanding: "whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict." <u>United States v. Terry</u>, 911 F.2d 272, 278 (9th Cir. 1990). As the Ninth Circuit has recognized on a number of occasions, a motion for acquittal after a jury verdict "should be granted only in exceptional cases in which the evidence preponderates highly against the verdict." <u>United States v. Pimentel</u>, 654 F.2d 538, 545 (9th Cir. 1981) (emphasis added).

"[I]n a case involving factual disputes and credibility determinations," a court "must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>United States v. H.B.</u>, 695 F.3d 931, 935 (9th Cir. 2012); see also <u>United States v. Johnson</u>, 229 F.3d 891, 894 (9th Cir. 2000) (all conflicting inferences to be resolved in favor of the jury's verdict). The Rule 29 standard is therefore "highly deferential," <u>United States v. Argueta-Rosales</u>, 819 F.3d 1149, 1157 (9th Cir. 2016), and courts applying it "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts," <u>United States v. Alarcon-Simi</u>, 300 F.3d 1172, 1176 (9th Cir. 2002) (quotation marks omitted).

**B. The Court Should Not Disturb the Jury Verdicts**

Defendant's argument for a judgement of acquittal recycles arguments defendant raised during trial and that were previously rejected by the jury. Defendant applies the incorrect legal standard

in asking the Court to impose its judgment over that of the jury's. The jury's guilty verdicts were supported by sufficient evidence. This is especially true when considering those verdicts under the highly deferential Rule 29 standard under which the Court must credit the testimony of the cooperating witnesses and draw all inferences from their testimony and the other evidence presented at trial in favor of the government.

There is no dispute victim Reginald Brown was murdered on the morning of November 14, 2014, outside his residence on 327 West 83rd Street. Brown was a rival (Hoover) gang member[1] and, on the morning of November 14, 2014, was working right outside his house, wiping his car off. (CR 315, Tr. 4/5/22, p. 25.) Brown's wife, Janine Webster, testified that she was inside the house when she heard the gunshots ("gunshots just started ringing off.") (Id.) After Webster came outside, she saw Brown "laying there just helpless." (Id., p. 26.) Webster told a neighbor to call an ambulance and cradled Brown as he died in her arms. (Id.)

A witness, Vilma Guzman, saw a young man exit the rear passenger side of a large white car with a big gun. (Id., p. 30-31.) LAPD Detective Flaherty responded to the crime scene and recovered partial video of the incident, including of a white Cadillac Escalade driving past the crime scene at the time of the murder, consistent with the direction from which the bullets were fired. (Id., pp. 43-44; Exhs. 18A-D.) Law enforcement determined that defendant at that time owned

---

[1] Substantial evidence proved defendant's rivalry and hatred of Hoover gang members. LAPD Detective Andres Fernandez, a gang expert, testified that this was a long-standing rival. CW-D testified as well regarding this rivalry. (4/11/22, p. 1030.) CW-B also testified regarding this rivalry. (Id., p. 959.)

4

a 2003 white Cadillac Escalade, registered in his name, matching the vehicle used in the murder. (Id., p. 56; Exh. 22 (registration).)

Just after the murder, law enforcement recovered bullet casings at the crime scene. (Id., p. 81-82; Exhibit 21.) Those bullet casings were found to be a match with the AK-47 found months later inside of a minivan rented by defendant. (Id., p. 86; Exh. 25 (photograph of AK-47 in rental van); Exh. 26 (rental agreement for the van).) An expert witness, Daniel Rubin, testified that he test fired the AK-47 recovered in the rented van and compared the shell casings with the casings found at the crime scene and found them to be a match. (CR 268, pp. 259-260.)

A cooperating witness (CW-D) testified that defendant was concerned about the AK-47 being recovered in his car because "it had bodies on it." (April 11, p.m., p. 1030.) Specifically, the witness stated that defendant went up (consistent with the direction defendant drove from his home to the victim's residence) and shot up some Hoovers. (Id.)

Another witness testified that the morning of the murder, defendant returned and warned a witness (CW-A) that Red from Hoovers (referring to victim Brown) had been "dropped." (CR 316, p. 48-49.) Specifically, defendant said "we knocked that fool from Hoover down, that fool Red." (Id., p. 55.) At the time, defendant was with some "younger guys" (consistent with Vilma Guzman's testimony about the shooters). (Id., pp. 48- 55.) Defendant also warned CW-A to watch his back that morning based on the fear of retaliation. (Id., p. 49.)

The jury was also presented with defendant's own contradictory statements made during his post-arrest interview. When Det. Melvin

5

Hernandez asked defendant what types of cars he owned around the time of Brown's murder (without explaining to defendant why he was being asked about this timeframe), defendant listed off several cars – intentionally omitting the White Cadillac Escalade visible on the security camera footage from the time of Brown's murder. Subsequently, when defendant was shown picture of Reginald Brown, he admitted to also owning a White Cadillac Escalade at the time. When defendant was asked how he knew the AK-47 found in his rented van was associated with a murder, he gave a series of conflicting statements, namely, that he heard 'on the street' or that he learned from his attorney. The jury also heard recorded jail calls from defendant in 2016 when he discussed the AK and its connection to a murder. And the jury also heard testimony from Daniel Rubin that the first-time law enforcement connected the AK found in defendant's van to the murder of Reginald Brown was not until December 2018.

In sum, all of this evidence was sufficient to prove defendant's guilt beyond a reasonable doubt. Defendant's arguments are not persuasive. Defendant's argument that the guilty explanation is "not the only reasonable interpretation of the circumstantial evidence presented" (Motion, p. 10) overlooks the highly deferential legal standard in reviewing a jury's verdict in a post-trial motion  Cf. United States v. Nevils, 598 F.3d 1158, 1166-67 (9th Cir. 2010) (noting that it is error for a reviewing court to "consider[] whether the evidence produced at trial may be innocently explained" and adopt an exculpatory explanation when the evidence is also susceptible to an inculpatory inference); see also McDaniel v. Brown, 558 U.S. 120, 133-34 (2010). The law is clear that for all "factual disputes and credibility determinations," a court "must presume that the trier of

fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." H.B., 695 F.3d at 935.  Defendant's factual arguments that there was an "alternative interpretation" to the evidence and that the government "offered no evidence as to the evidence as to the identity of the shooter or the shooter's association with the charged racketeering conspiracy" were raised to the jury and rejected.  There is no basis now to disturb the jury's verdict.  Moreover, defendant's arguments are not compelling.  There is no plausible alternative interpretation to the collection of evidence, especially given the testimony of the cooperating witnesses.  Further, there is no requirement that the government prove the identity of the shooter in order for the jury to find defendant participated in the murder (either as an aider and abettor or as a co-conspirator).

In sum, there was overwhelming evidence of defendant's guilt as to this murder and the jury verdict should not be disturbed.

## III. The Court Should Also Deny Defendant's Request for a New Trial

### A.    Legal Standard for a Motion for a New Trial

Federal Rule of Criminal Procedure 33 allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is a real concern that an innocent person may have been convicted." United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009); see also United States v. Alston, 974 F.2d 1206 (9th Cir. 1992) (affirming order granting new trial where district court reasonably concluded that defendants had not committed a criminal

7

antitrust violation). Because a jury's verdict is presumptively valid, the Ninth Circuit has stated that a new trial motion under Rule 33 "should be granted <u>only in exceptional cases</u> in which the evidence preponderates highly against the verdict." <u>United States v. Pimentel</u>, 654 F.2d 538, 545 (9th Cir. 1981) (emphasis added). In other words, a new trial motion should be granted only where "a serious miscarriage of justice may have occurred." <u>United States v. Kellington</u>, 217 F.3d 1084, 1097 (9th Cir. 2000) (citation omitted).

Here, defendant cannot establish that this is an exceptional case in which a new trial should be granted. Each of defendant's arguments were raised prior to trial and correctly rejected by the Court.

**B. There Is No Basis to Disturb the Jury's Verdict**

    1. <u>The Court Correctly Denied Defendant's Continuance Request</u>

The Court should reject defendant's argument that he was denied adequate time to investigate. "The decision to grant or deny a requested continuance lies within the broad discretion of the district court, and will not be disturbed on appeal absent clear abuse of that discretion." <u>United States v. Flynt</u>, 756 F.2d 1352, 1359 (9th Cir. 1985); <u>United States v. Daly</u>, 716 F.2d 1499, 1511 (9th Cir. 1983). The Ninth Circuit does not find a "clear abuse of discretion unless, after carefully evaluating all the relevant factors, [it] conclude[s] that the denial was arbitrary or unreasonable." <u>Id.</u>

Here, defendant's claim is entirely based on his argument that additional time was needed to investigate the co-case agent's misconduct. As the court is aware, this agent did not testify at

trial.  The only investigative avenue that defendant identifies that he purportedly was unable to pursue was the ability to interview a former confidential informant regarding misconduct of the agent. This argument is based on layer upon layer of speculation.  Such conjecture is not a basis for a continuance and certainly not a basis to overturn a jury's verdict.  For example, it is speculative as to whether this witness would ever agree to be interviewed.  It is also speculative that this witness would provide any new relevant information that was not already disclosed.  Most importantly, even if those threshold questions were met defendant entirely fails to address how any evidence regarding this entirely unrelated conduct would be relevant, admissible, or have made any different in the outcome at trial.  Indeed, it is hard to imagine any such scenario and defendant does not offer any such alternative.  Finally, against this backdrop, the Court was correct in denying a continuance, given the witness safety concerns involved in a lengthy continuance and the numerous other logistical issues present. Defendant had ample time to prepare for trial.  Defendant cannot identify any prejudice resulting from the denial of the continuance as the cooperating witnesses were subjected to lengthy and extensive cross examination. The interview of an unrelated former cooperating witness would have had no impact whatsoever on these proceedings.  The Court should reject this argument as it is not a basis for a trial continuance.

      2.   <u>The Court Correctly Found the Evidence of Defendant's Involvement in Murder Was Admissible and Defendant's Proposed Limiting Instruction Was Confusing</u>

Defendant attempts to relitigate the Court's admissibility rulings regarding defendant's admissions to murders.  However, the Court correctly held that such evidence was admissible.  The Ninth

Circuit will "review the district court's evidentiary rulings for abuse of discretion and its underlying factual determinations for clear error. See United States v. Shryock, 342 F.3d 948, 981 (9th Cir. 2003). Defendant does not make any arguments here as to admissibility and simply incorporates his prior filings, essentially ignoring the Court's prior ruling and the government's arguments. The government incorporates its prior filings fully herein. (E.g., CR 141.)

The Court was correct in refusing to give defendant's proposed limiting instructions. Those instructions were confusing and not required by law. Indeed, defendant's recycled argument does not provide any legal authority requiring such an instruction. Further, defendant never has responded to the fact that defendant's admissions to committing murders and shootings includes the murder/shootings alleged in this case, and thus the limiting instruction would be misleading. Further, the Court carefully instructed the jury on the law, including the presumption of innocence, the burden proof, the elements of the charged offenses, what is (and is not) evidence, and the separate consideration of multiple counts. See generally CR 288 (closing jury instructions).

It is also notable that the government never argued the propensity argument that defendant references. Further, the fact that the jury did not reach such a conclusion is shown as well by the fact that the jury did not convict defendant as to the murder of Raymond Pickett.

In sum, defendant's argument provides no basis to disturb the jury verdicts. Defendant's argument is dependent on his interpretation of the evidence – namely, that when defendant

10

commented about committed acts of violence it was not a reference to those acts of violence charged in this case. The Court rightly rejected this self-serving and selective interpretation of the evidence. Defendant's proposed instructions regarding this would be improperly adopting this interpretation instead of allowing the jury to evaluate the evidence and render an impartial verdict. Further, the Court did properly instruct the jury and there is no reason to believe the jury made any improper inferences. In fact, from the jury verdicts, it appears that the jury carefully parsed out the evidence in reaching its verdicts.

### 3. The Voir Dire Process Was Adequate

Defendant also argues that the Court erred in not giving his proposed voir dire questions. The Ninth Circuit will "review the district court's voir dire for an abuse of discretion." United States v. Powell, 932 F.2d 1332 (9th Cir. 1991). "It is wholly within the judge's discretion to reject supplemental questions proposed by counsel if the voir dire is otherwise reasonably sufficient to test the jury for bias or partiality." Id. (citing United States v. Baldwin, 607 F.2d 1295, 1297 (9th Cir. 1979).

Here, as the Court recalls, defendant asked for very specific voir dire, asking the Court to inquire as to things such as "will evidence that Mr. Wallace committed murders in the past make you think he is more likely to be guilty of committing the specific murders alleged in the indictment" and "would you want to find Mr. Wallace guilty of something if you heard evidence that he committed other murders not specifically alleged in the indictment?" (CR 169.) Prior to trial, the parties addressed these proposals and the Court carefully voir dired the jurors. There was no indication that the

formulations posed by the Court were in any way insufficient. In fact, the jury was clearly able to parse out the evidence for the charged offenses and apply the presumption of innocence. In fact, the jury did not find defendant responsible for the R.P. murder.

Moreover, defendant's proposed voir dire questions were extremely confusing, given that evidence as to defendant's acts of violence also incorporated his acts of violence in this case. As set forth above, when defendant was admitting "murders" and "shootings" it was at the very least a reasonable argument that such admissions included the charged conduct. At bottom, defendant's argument seems to be that the Court did not adopt his interpretation of the facts during voir dire. The Court correctly rejected this argument when it was first made and should do so again.

### 4. The Court Did Not Violate Defendant's Confrontation Clause Rights

Defendant next argues that the Court violated defendant's confrontation clause rights by limiting his cross examination. Defendant does not point to any specific limitation, but just cites generally to his in-camera filing.[2] In any event, the cooperating witnesses were extensively cross examined. The Court had discretion to limit cross-examination to avoid confusion and misleading the jury. The parties briefed extensively the appropriate limitations on the admissibility of the evidence as to the cooperating witnesses. The jury was exposed at length to areas of impeachment – including their convictions, their agreements with the government, any payments they received, and any acts of untruthfulness, among numerous other

---

[2] The government still does not have a copy of that filing.

12

areas. Defendant does not cite to any specific deficiencies and his challenge should be rejected.

In any event, the limitations imposed by the Court were appropriate and not a basis to disturb the jury verdicts. As the Ninth Circuit has explained: "a trial court retains 'wide latitude' to exclude cross-examination that is, among other things, harassing, prejudicial, confusing of the issues, threatening to the witness's safety, repetitive, or only marginally relevant. . . . '[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" United States v. Larson, 560 3d. 1200 (9th Cir. 2006) (quoting Delaware v. Van Arsdale, 475 U.S. 673 (1986).

### 5. The Court Did Not Deny Defendant a Meaningful Opportunity to Present His Defense

Finally, the Court should reject defendant's arguments that he was denied the ability to present a meaningful defense. The Court gave defendant significant leeway, including allowing defendant to call a defense expert who was noticed the night before his testimony. Each of defendant's arguments now are unsupported by the law. Defendant, while entitled to mount a robust defense, is still subject to the rules of evidence. The Court in this trial set reasonable limitations in accordance with the rules.

Defendant first asserts he was denied a meaningful defense because he was unable to play excerpts of his own statements. As an initial issue, the parties submitted excerpts and litigated over them prior to trial. See CR 188, 194. The Court carefully reviewed these, including for relevance and any completeness concerns. Thus,

13

there were no surprises as to the excerpts or clips the government intended to introduce.  However, even after that process, defense counsel surprisingly took the position at trial that defendant was entitled to play additional excerpts, essentially trying to undo all of the litigation previously engaged in by the parties and ruled upon the Court.  For the reasons set forth in the Government's filing, CR 273, which is fully incorporated herein, defendant's attempt to admit his own out of court statements was contrary to the rules of evidence.  For the reasons set forth in the government's filing, the Court's evidentiary ruling was correct and defendant was not entitled to play additional clips.

Lastly, defendant argues that he was entitled to call probation officers and two district court judges (Judge Kronstadt and Judge Fischer) about an FBI agent's misconduct.  The government addressed this request in its opposition to the issuance of the subpoenas, at CR 274, which is incorporated by reference.  The Court was correct in denying subpoenas for these witnesses.  The value of their testimony was extremely limited as there was no indication that it was proper impeachment of the cooperating witnesses (the witnesses were unaware of the misconduct and thus it cannot be deemed a benefit).  Further, given that the agent was not a witness it could not be impeachment of him.  For the reasons stated in the government's opposition, the relevance of this evidence was extremely limited – it relied on mere conjecture that the evidence should have been disclosed to the probation officer and district court judges.  The jury would have had no context whatsoever to evaluate this purported evidence or to place it in context.

14

In sum, for the reasons previously set forth in court filings, the Court was correct in placing these reasonable limitations on defendant.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion.