AMY E. JACKS (#155681)
LAW OFFICE OF AMY E. JACKS
315 E. 8th St. #801
Los Angeles, CA  90014
Telephone: (213) 489-9025
Facsimile: (213) 489-9027
Email: amyejacks@sbcglobal.net

SHAUN KHOJAYAN (#197690)
LAW OFFICES OF SHAUN KHOJAYAN
 & ASSOCIATES, P.L.C.
515 S. Flower Street, 19th Floor
Los Angeles, CA 90071
Telephone: (310) 274-6111
Facsimile:  (310) 274-6211
Email: shaun@khojayan.com

Attorneys for Defendant
PAUL GARY WALLACE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**(HONORABLE ANDRE BIROTTE)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL GARY WALLACE,<br><br>Defendant. | Case No.:  20-CR-00293-AB-1<br><br>DEFENDANT WALLACE'S SENTENCING MEMORANDUM<br><br>Sentencing date: July 29, 2022 |

Defendant Paul Gary Wallace hereby files his Sentencing Memorandum.

## I.    INTRODUCTION

Paul Gary Wallace, 56 years old, is before the Court for sentencing on his charge of Racketeer Influenced and Corrupt Organizations Conspiracy and Use and

Carry a Firearm During and in Relation to, and Possess a Firearm in Furtherance of, a Crime of Violence, Resulting in Death, Aiding and Abetting.

Mr. Wallace has distanced himself from gang life. His mother and family were shocked when they learned of his arrest as he is a reformed gang-member who used his organizations, Trucing the gangs, United We Stand Up, and his own prison experience to spread peace and unity among gang members.  Mr. Wallace's family describes him as a positive role model to those around him.  His family members remain supportive during the instant offense.

Unlike the 120 months mandatory minimum sentence on Count 2 for the section 924(c) offense, the advisory sentence of life is not mandatory on Count 1. Given his traumatic life history including being shot several times as a teenager and, later, his important gang peacekeeping efforts, a mitigated sentence is respectfully requested.

## II.   SENTENCING FACTORS

Title 18 U.S.C. § 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement ... issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar

2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in § 3553(a)(2).  In making this determination, the district court may not presume that a guideline sentence is the correct one.  *Nelson v. United States*, 129 S.Ct. 890, 892 (2009) (per curium).  Ultimately, the district court must make an independent determination as to the appropriate sentence, taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States*, 552 U.S. 38, 49-50 (2007).

Sentencing, that is to say punishment, is perhaps the most difficult task of a trial court judge." Jack B. Weinstein, *Does Religion Have a Role in Criminal Sentencing?*, 23 Touro L. Rev. 539, 539 (2007). While there are many competing considerations in every sentencing decision, a sentencing judge must have some understanding of "the diverse frailties of humankind." *See Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion). In deciding what sentence will be "sufficient, but not greater than necessary" to further the goals of punishment, 18 U.S.C. § 3553(a), a sentencing judge must have a "generosity of spirit, that compassion which causes one to know what it is like to be in trouble and in pain." Guido Calabresi, *What Makes a Judge Great: To A. Leon Higginbotham, Jr.*, 142 U. Pa. L. Rev. 513, 513 (1993); *see also* Edward J. Devitt, *Ten Commandments for the New Judge*, 65 A.B.A. J. 574 (1979), reprinted in 82 F.R.D. 209, 209 (1979) ("Be kind. If we judges could possess but one attribute, it should be a kind and understanding heart. The bench is no place for cruel or callous people regardless of their other qualities and abilities.  There is no burden more onerous than imposing sentence in criminal cases.").

3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.    DEFENDANT'S POSITION ON SENTENCING FACTORS

### A.    THE NATURE OF THE OFFENSE

Defendant Wallace was convicted of Count 1 and Count 2. As part of the verdict on Count 1, RICO conspiracy, the jury found that Mr. Wallace murdered R.B. R.B.'s murder took place on November 13, 2014. Count 2 was based on the brandishing and discharge of a firearm in relation to R.B.'s murder. The Probation Officer used that murder to calculate the starting base offense level of 43.

### B.    THE DEFENDANT'S HISTORY AND CHARACTERISTICS

Paul Gary Wallace, 56 years old was born in 1966, in Vivian, Louisiana.  His parents are William Gaye and Gertrude Jackson. Mr. Wallace's parents were never married to each other. When Mr. Wallace was 5 years old, his mother discovered that Mr. Gaye was married and had another family.  She broke off their relationship and thereafter, moved with her seven children to Los Angeles.  Mr. Wallace recalls only one good memory of his father and they briefly attempted to mend their relationship before his father died. Mr. Wallace suffered from depressive symptoms and feelings of abandonment following his parent's separation.

In 1982, when he was 16 years old, Mr. Wallace was shot. He was treated at Centinela Hospital where he remained for two months. Mr. Wallace was told that he would never walk again. After two months in the hospital, Mr. Wallace was transferred to Rancho Los Amigos Rehabilitation Center.  He remained at this facility for one year. After leaving the rehabilitation facility, Mr. Wallace continued to exercise and work towards walking again which he achieved shortly after returning home.  As a result of his injury, Mr. Wallace walks with a limp. Mr. Mr. Wallace continues to suffer from pain in his left leg that he describes as a constant severe burning pain. He takes pain medication daily.

Two years later in 1984, Mr. Wallace and a friend went to a park to celebrate his rehabilitation and walking again. The celebration was short lived as rival gang

4.

members approached Mr. Wallace and his friend and opened fire. Mr. Wallace was shot seven times – once in each hip and five times on the back of his right bi-cep. Mr. Wallace was taken to Daniel Freeman Hospital where he remained for three weeks. Later that same year, Mr. Wallace was shot in his lower back while waiting on his bicycle in front of Fremont High School.  Someone in a vehicle had shot him with a shotgun.

Mr. Wallace did not receive any grief counseling or psychotherapy following the traumatic family events in his life, including the several times he was shot at and several of his friends' deaths.  Mr. Wallace suffers from anxiety-related disorders including PTSD; disorders involving excessive stress and worry such as obsessive-compulsive disorder; and substance use disorders. These disorders have caused Mr. Wallace anguish, but the mental toll from gun shots has proved to be deeper and continues to impact his life daily.

Mr. Wallace had seven  siblings, Janice Jackson (deceased); Desoto Jackson, Jr. (decased), Sharon Wallace, age 60, Ora Wallace, age 58, Vicky, age 54, Kenneth Jackson, age 64 and Cornell Wallace, age 61. He lived with his mother, siblings, and one of his mother's friend's children after his mother moved to Los Angeles. The family relocated to South-Central Los Angeles at a time when the Crips and Bloods were beginning to form and the crack epidemic was in its infancy.  Mr. Wallace's mother was physically and financially responsible for him.  Mr. Wallace was close to his sister Janice who cared for Mr. Wallace growing up.  His brother Kenneth also stepped up as a father figure after Paul's father's death. Mr. Wallace's psychological wellbeing and social behavior suffered. Wallace began associating with gang members when he was 6-7 years old when his mother was working.  He round around on the teenagers' handlebars as an elementary school student.

Mr. Wallace overcame difficult hardships and attended High School up to 10th grade at a continuance high school in Huntington Park.  He discontinued school after

5.

he was shot in 1982.  Mr. Wallace plans to complete his GED and completed the "Repeating the Cycles" class while at the Metropolitan Detention Center.   Mr. Wallace has specialized training and skill as a public and motivational speaker and in mentoring at-risk youth.

Mr. Wallace was widely lauded as being instrumental in ending a 20-year war between rival gangs, Florencia 13 and East Coast Crips. Mr. Wallace's friends and supporters knew him from his gang intervention work.  He worked in the community to help at risk kids not make the same mistakes he did. Mr. Wallace felt this was his calling in life and that he was making great strides helping people. Mr. Wallace sought the help of his friend Pastor Shep who allowed Mr. Wallace to speak at his church on these issues. At Mr. Wallace's church, the reverend spoke to the congregation about Mr. Wallace's good work in the community and he was doing "big things" for the church. Mr. Wallace's family supported him during this time and he often times received standing ovations for his work.

Mr. Wallace also worked with Kim Magil and Skip Townsend at "Trucing the Gangs." Mr. Wallace took part in negotiating and organizing truces between various gangs. Mr. Wallace started a non-profit organization, "United We Stand Up," to further his mission to secure truces between gangs. After his arrest, Pastor Shep took over his organization.

With the Court's permission, Skip Townsend, Pastor Shep and Ralph "Hakeem" Haynes (Mr. Wallace's friend) intend and request to speak at Mr. Wallace's sentencing about their first-hand accounts of Mr. Wallace's peacekeeping efforts.

Mr. Wallace is focused solely on bettering his life and that of his young family. He had a difficult upbringing and trauma in his life that should be taken into account towards a mitigated sentence.  Throughout his struggles, his mother has been his support system.  He did not receive any grief counseling or psychotherapy following

6.

his various traumatic and unfortunate events that caused long-term effects after surviving shooting after shooting.

While at the MDC, Mr. Wallace serves as the "trustee" for his module, and he is responsible for cleaning up.

Mr. Wallace has a 17-year-old daughter, Aonyea from a previous relationship with Crystal Johnson. Mr. Wallace's daughter resides with his mother due to Mr. Wallace's ex's problems with substance abuse. Mr. Wallace is currently in a relationship with Mia Thomas. Their union produced three children, Amia, age 1, Amani, age 12 and Emari, age 15. Mr. Wallace is motivated to get his life in order and accomplish his goals.

## B.    THE ADVISORY SENTENCING GUIDELINES

### 1.  Objections To Presentence Investigation Report

Mr. Wallace objects to the scoring of the following convictions for the reasons noted.

¶42. 10/21/1996 4600 PC, 496(a) PC, 4502(a) PC, 2 years' prison; paroled 09/30/1999. PSR at 11. This offense should not score because his release on the offense was not within 15 years of R.B.'s murder on 11/13/2014, which murder is the basis of the starting base offense level used by the probation officer.

¶44. 07/26/2006 12021(a)(1) PC: Felon in possession of firearm 08/04/2006: 16 months prison. PSR at 11. This offense should not score because it is not a "prior sentence" as it was part of and not prior to the RICO conspiracy charged in Count 1 as presented by the government at trial (Trial Ex. 62). *See* U.S.S.G. § 4A1.2(a)(1) ("prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, ***for conduct not part of the instant offense*.**) (emphasis added).

¶45. 01/23/2009 12316(B) PC: Illegally possess ammunition 01/04/2010: 16 months prison. PSR at 12. This offense should not score because it is not a "prior

7.

sentence" as it was part of and not prior to the RICO conspiracy charged in Count 1 as presented by the government at trial (Trial Ex. 63). *See* U.S.S.G. § 4A1.2(a)(1).

¶46. 09/24/2011 11350(a) H&S: Possess cocaine, 2 years prison. PSR at 12. This offense should not score because it is not a "prior sentence" as it was part of and not prior to the RICO conspiracy charged in Count 1 as presented by the government at trial (Trial Ex. 64). *See* U.S.S.G. § 4A1.2(a)(1).

¶47. 02/05/2016 18 U.S.C. 922(g)(1): Felon in Possession of Firearms and Ammunition. 04/27/2018: 30 months prison. PSR at 12. This offense should not score because it is not a "prior sentence" as it was part of and not prior to the RICO conspiracy charged in Count 1 as presented by the government at trial (Trial Ex. 65). *See* U.S.S.G. § 4A1.2(a)(1).

Therefore, without scoring these convictions, his criminal history score is a 3 and his Criminal History Category is a II.

**2.      Defendant's Recommended Advisory Sentencing Guidelines**

Based on his history and the history and characteristics of the case, Mr. Wallace would respectfully request the following downward departures and variances.

**a.      A Reduction Based on His Extra-Ordinary Traumatic Upbringing Is Appropriate**

As stated above, Mr. Wallace never had a father figure and his mother left him to be cared for by older siblings while she worked. This was crucial to Mr. Wallace's development and caused detrimental effects on him. The lack of a relationship with his biological father was devastating and caused long-term grief upon Mr. Wallace. As well, he was shot several times as a teenager leading to life-long, physical disability. Evidence about the defendant's background is relevant to reduce his sentence because of the belief "long held by this society, that the defendants who commit criminal acts that are attributable to a disadvantaged background or to

8.

emotional or mental problems may be less culpable than defendants who have no such excuse." *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989). For these reasons, a significant reduction in his contemplated sentence is appropriate.

### b. A Reduction Based on His Good Deeds is Appropriate

It is important to note that the instant indictment was based largely on conduct that happened at or before Mr. Wallace's arrest on his 2016 case. Mr. Wallace had made strides to turn things around after his release from prison on his 2016 case. Mr. Wallace's extensive peacekeeping work including bringing about a truce between two gangs is remarkable and should be considered to mitigate his sentence. Such good deeds are not common in today's society and a reduction based on these good deeds is appropriate. *See United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (*en banc*) (where defendant convicted of tax evasion of $225,000, court's sentence to probation with one year home detention was not unreasonable in part because of defendants charitable activities and good deeds).

"[S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'" *United States v. Adelson*, 441 F. Supp.2d 506, 513-14 (SDNY 2006) (securities fraud case, where guidelines call for life sentence, court imposed a 42 months sentence in part because of the defendant's past good deeds).

//

9.

## IV.   CONCLUSION

Based on the foregoing, the Defense recommends a mitigated sentence taking into consideration the minimum sentence of 120 months that is mandatory on Count 2. The Defense would also request the Court designate Mr. Wallace to a facility in Southern California to be closer to his family.

Respectfully submitted,

Dated: July 15, 2022                    s/ Shaun Khojayan

                                        s/ Amy E. Jacks
                                        Attorneys for Defendant Paul Gary Wallace

10.